ELIZABETH McGOVERN v. MARY ELLEN HOPE ET AL.

Submitted December 5, 1898—Decided February 27, 1899.

1. The act of the legislature approved May 12th, 1896, entitled "A supplement to an act entitled 'An act concerning evidence'" (*Pamph. L.*, *p.* 344), which provides that on or before the trial of any action brought to recover damages for personal injuries the court may order and direct an examination of the person injured as to the injury complained of

by a competent physician or physicians, surgeon or surgeons, in order to qualify the person or persons making such examination to testify in the said cause as to the nature, extent and probable duration of the injury complained of, is constitutional both with respect to the title and to the subject-matter of the act.

2. In executing the powers conferred upon the court by this statute the proceedings will be so controlled in the designation of physicians and surgeons and with respect to the mode in which the examination shall be conducted, as to give both parties an equal opportunity of having qualified witnesses present at the examination, and will also require, as far as practicable, the examination to be conducted in such a manner as not to subject the plaintiff to any unnecessary annoyance or exposure of her person.

On petition for physical examination of plaintiff.

Before Justices DEPUE, VAN SYCKEL and LIPPINCOTT.

For the plaintiff, *Joseph Anderson.*

For the defendants, *Randolph, Condict & Black.*

The opinion of the court was delivered by

DEPUE, J. This action was brought by the plaintiff against the defendants as owners and in possession of certain premises designated as Nos. 74 and 76 Newark avenue, in Jersey City. The gravamen of the plaintiff's action as set out in her declaration is that the defendants illegally, wrongfully and unjustly maintained a pitfall in the sidewalk in front of the buildings on said premises, by means of which the plaintiff was, on the 8th of August, 1897, " severely and permanently injured, bruised and cut about her person," in consequence of which injuries she seeks to recover damages from the defendants, claiming the sum of $10,000.

The cause being put at issue, the defendants present to this court a petition for the physical examination of the plaintiff. The petition alleges that the defendants did not know or hear of said injuries to the plaintiff until the plaintiff's declaration was filed; that they have made a demand or request upon the plaintiff to permit them to have a physician or surgeon

make a physical examination of the plaintiff, so as to enable him to testify at the trial as to the nature and extent of her alleged injuries, and that the plaintiff refused such request.

This petition is presented pursuant to an act of the legislature approved May 12th, 1896, entitled "A supplement to an act entitled 'An act concerning evidence.'" That act provides: "On or before the trial of any action brought to recover damages for injury to the person, the court before whom such action is pending may, from time to time on application of any party therein, order and direct an examination of the person injured as to the injury complained of by a competent physician or physicians, surgeon or surgeons, in order to qualify the person or persons making such examination to testify in the said cause as to the nature, extent and probable duration of the injury complained of; and the court may in such order direct and determine the time and place of such examination; provided, this act shall not be construed to prevent any other person or physician from being called and examined as a witness as heretofore." *Pamph. L., p.* 344.

The application is resisted by plaintiff's counsel on several grounds touching the constitutionality of the act. It is insisted, first, that the act is imperfect in that the object of the act is not expressed in the title. The act is entitled "A supplement to an act concerning evidence." As the object of this proceeding is to obtain evidence, this objection cannot be sustained. In the act concerning evidence provisions are contained in relation to the inspection of property and to the taking of depositions to be used as evidence in the case of witnesses. The proceeding authorized by this statute is a proceeding to obtain evidence, analogous to proceedings that authorize an inspection of property and the taking of depositions, and a statutory enactment such as this properly comes under the title of "An act concerning evidence." Such a title is quite as appropriate as would be a title relating to the practice of law.

Nor can this act be regarded as an infringement of the con-

stitutional right of a party in a civil suit to be confronted by the witnesses. This objection if valid would set aside the statute that authorizes the taking of depositions. Nor will the consideration of any unfairness in resort to these proceedings be of any avail. If the subject is within the cognizance of the legislature the legislative policy must prevail.

The question has been very much discussed as to whether the courts have not an inherent jurisdiction to compel a plaintiff to submit to such an examination independently of any statute expressly authorizing it. *Schroeder* v. *Chicago, Rock Island and Pacific Railroad Co.,* 47 *Iowa* 375, is the leading case sustaining such a power on the part of the court. That decision has been followed in some of the courts of other states. This doctrine has been denied in the Supreme Court of the United States and in the New York courts. *Union Pacific Railway Co.* v. *Botsford,* 141 *U. S.* 250; *McQuigan* v. *Delaware, Lackawanna and Western Railroad Co.,* 129 *N. Y.* 50. The decision in the former of these two cases was put upon the ground that the power of the federal courts is such as they have under the constitution and laws of the United States, and that by act of congress the mode of proof and of obtaining discovery and inspection did not comprehend the power to require a party to submit himself to an examination of his person. The decision of the New York court went upon the same ground, and Judge Andrews, delivering the opinion of the court, said : " The exercise by the court of the power now invoked, as has been shown, is not sanctioned by any usage in the courts of England or of this state. Its existence is not indispensable to the due administration of justice. Its exercise, depending on the discretion of the judge, would be subject to great abuse. We think the assumption by the court of this jurisdiction, in the absence of statute authority, would be an arbitrary extension of its powers." The decision of the New York court was announced in December, 1891, and in 1893 the legislature of New York conferred power on the courts of the same nature with the power conferred by our act of 1896. That act provided that

in every action to recover damages for personal injuries the court or judge in granting an order for the examination of the plaintiff before trial may, if the defendant apply therefor, direct that the plaintiff submit to a physical examination by one or more physicians or surgeons to be designated by the court or judge, and such examination shall be had and made under such restrictions and directions as to the court may seem proper.     In principle the New York act is identical with the statute now under consideration, with respect to the constitutional objection made by the plaintiff.     In 1894 the Court of Appeals of New York held that this act did not violate any of the express or implied restraints upon the legislative power found in the federal or state constitutions.     *Lyon* v. *M. Railway Co.*, 142 *N. Y.* 298.     Mr. Justice O'Brien, delivering the opinion of the court in the case just cited, said : " The statute enacts a rule of procedure, the purpose of which is the discovery of the truth in respect to certain allegations which the plaintiff has presented for judicial investigation in the courts of justice.     It prescribes a method of aiding the court and jury in the determination of an issue of fact raised by the pleadings, and, it seem to me, does not violate any of the express or implied restraints upon the legislative power to be found in the fundamental law."

In the case just cited the order for an examination was set aside, for the reason that it did not conform to the statute, which did not authorize a physical examination apart from and independent of an examination of the plaintiff as a witness before trial.     In that respect our statute differs from that of New York.

With respect to the power of the legislature to pass an act authorizing such an examination of a party before trial we concur in the opinion of the Court of Appeals of New York. In *Schroeder* v. *Chicago, Rock Island and . Pacific Railroad Co.*, *supra,* the plaintiff brought his action to recover damages for personal injuries caused by the defendant's negligence. The jury had been sworn when the defendant requested the court to make an order requiring the plaintiff to submit to a

physical examination to determine the character and extent of the injuries. The court denied this application. On cross-examination the plaintiff was asked if he would allow a physical examination to be made. Objection was taken to the question and sustained, and the court held that it had no power to order such an examination. The Supreme Court reversed the judgment. The following extract from the opinion of the Supreme Court will show the reason on which the decision of the court below was reversed. " The plaintiff claims in his pleadings, and so testified in the former trial, that the injuries produced permanent disability. * * * The proposition is plain that a proper examination by learned and skilful physicians would have opened the road by which the cause could have been conducted nearer to exact justice than any other way. The plaintiff, as it were, had under his own control testimony which would have revealed the truth more clearly than any other that could have been introduced. The cause of truth, the right administration of the law demand that he should have produced it." *White* v. *Milwaukee Railway Co.*, 61 *Wis.* 536, was also an action for personal injuries, in which the plaintiff was a woman. During the trial the defendant applied for a physical examination of the plaintiff by two physicians in a private room at the court-house, in the presence of her own physician and such woman friends as she might choose. The court refused to order the examination and the plaintiff declined it, alleging her own physician had departed from the city after leaving the witness-stand. The judgment in that case was reversed for the reason that the court denied this request on the sole ground that it had no authority to compel the plaintiff to submit to an examination against her will. The court *en banque* declared that " on principle and authority we are satisfied there was error," and concluded with these remarks : " The then condition of the injured limb had a most important bearing on the question whether the plaintiff's injuries were permanent, and an examination at that time, the results of which would have been put in evidence before the jury, would in all probability have

greatly aided them in determining the extent and consequences of the injury. It would be or might have been more satisfactory and conclusive evidence than the statements of the plaintiff or the opinions of medical witnesses. The application for her examination contained in it every reasonable safeguard against offending the modesty or delicacy of the plaintiff, and, although she might shrink from the examination, yet the ends of justice imperatively demanded that she submit to it. Such examinations are frequently ordered by courts in cases of divorce for impotency and in cases of alleged pregnancy, and the authority of the court to order them has never been questioned." In *Alabama G. S. Railroad Co.* v. *Hill,* 90 *Ala.* 71, the suit was for personal injuries alleged to be internal and of a permanent and dangerous character, and the plaintiff was a young woman " of delicacy and refinement." The defendant applied to the court prior to the trial and on the day of the trial for an order requiring the plaintiff to submit to an examination by a reputable and disinterested physician or physicians to be appointed by and to conduct the investigation under the control of the court. This application was denied for the lack of power, and judgment was reversed. In the judgment of reversal this language is used : " Her (the plaintiff's) delicacy and refinement of feeling, though of course entitling her to the most considerate and tender treatment consistent with the rights of others, cannot be permitted to stand between the defendant and a legitimate defence against her claim of a large sum of money. When it becomes a question of possible violence to the refined and delicate feelings of the plaintiff on the one hand and possible injustice to the defendant on the other the law cannot hesitate ; justice must be done. Was it essential to the ends of justice that the plaintiff should submit to this examination ? We think it was."

In many of our sister states orders of this sort have been made, in others refused. In the main the orders have been made under a power inherent in the court, and in some of the courts denied solely on the ground of lack of competent

legislative authority. The cases are cited in *Thomp. Negl.* 1038, 1041.

This subject is discussed by Mr. Thompson in language so appropriate to the judicial decision of a question of this sort, when pertinent to the trial of a cause where injuries of this nature are in issue, that an extended quotation will not be out of place, especially as his observations are vouched for by judicial decisions. " In modern trials of civil actions for physical injuries, the question has frequently arisen whether the court has power to order an inspection of the body of the plaintiff or person injured, for the purpose of ascertaining the nature and extent of the injuries. Some of the courts, carrying in their minds no higher conception of a judicial trial than the conception that it is a combat, in which each of the gladiators is permitted, within certain limits, to deceive and trick the antagonist and the umpire, have denied the right of the defendant to have an order for such inspection. Other courts, taking the more enlightened view that the object of a judicial trial is to enable the state to establish and enforce justice between party and party, have held that it is within the power of the trial court, in the exercise of a sound *discretion,* in proper cases, upon an application seasonably made, under proper safeguards designed to preserve the rights of both parties, to order such an inspection, and to compel the plaintiff or injured person to submit to it. Another court has held that where the plaintiff in such an action alleges that his injuries are of a permanent nature, the defendant is entitled, *as a matter of right,* to have the opinion of a surgeon, based upon a personal examination, unless there is already an abundance of expert evidence, in which case the court, in its discretion, may refuse to order an examination. Another court has ruled that the trial court may require the plaintiff in such an action to submit to a medical examination and *dismiss his action* if he refuses to comply with the order. This conclusion may be placed on the higher ground that, when a person appeals to the sovereign for justice, he impliedly consents to the doing of justice to the other party,

and impliedly agrees in advance to make any disclosure which is necessary to be made in order that justice may be done. The conception of the nature and objects of a judicial trial which denies to the defendant, under proper safeguards, the right of such an inspection, is not higher than that of the old law, which would not even compel a party to produce a deed or private paper, in a civil case, where it was intended to be used in evidence against him, a rule which the Court of Chancery invaded to prevent failures of justice, and which has almost entirely disappeared from modern civil jurisprudence." 1 *Thomp. Tr.*, § 859.

In the trial of causes in our courts orders have been made requiring a party alleged to have sustained an injury which is the subject-matter of the suit to exhibit the injured limb to the jury where such exhibition would not be accompanied by indecent exposure, and orders have been made in the courts of this state without objection for the examination of the injured party in an adjoining room by reputable physicians, and such examinations have been had. In proceedings for divorce and nullity of marriage orders for inspections of the body which are indelicate and distressing to the parties are made whenever necessary, and it is settled that the courts are not at liberty to decline to order such an inspection on the ground of indelicacy alone. 1 *Thomp. Tr.*, § 853; *Briggs* v. *Morgan*, 3 *Phillim.* 325; *Newell* v. *Newell*, 9 *Paige* 25. Where a suit is brought in which there is involved the consideration of injuries of a delicate nature, and which are, nevertheless, made the basis of damages to be awarded by a jury, there is no reason why such orders should not be made as would be appropriate to the administration of justice. The plaintiff, having brought suit and made claim for damages on account of personal injuries of that nature, cannot complain that the defendant resorts to legal methods to ascertain the existence and extent of such injuries.

With respect to the mode in which the authority conferred by the act shall be exercised the court has a discretion. The practice of the courts in suits for divorce or nullity of mar-

riage is stated in 1 *Thomp. Tr.*, § 855. In the English eccle-siastical courts the examination is conducted by medical inspectors, generally two physicians and a surgeon, or two surgeons and a physician, nominated by the complainant with the privilege conceded to the adverse party of naming one or more of them. Chancellor Walworth, on a bill to annul the marriage contract on the ground of the physical incapacity of the wife, where an application was made for her physical examination, suggested that the parties should make amicable arrangements in relation thereto and the physicians and sur-geons by whom the examination should be made, and, while affirming the duty of the court to procure such an examina-tion, suspended the entry of an order to compel the defendant to submit to the examination with a view of ascertaining whether such an amicable arrangement could not be made. *Newell* v. *Newell, supra.*

In executing the powers conferred upon the court by this statute the proceedings will be so controlled in the designa-tion of physicians and surgeons, and with respect to the mode in which the examination shall be conducted, as to give both parties an equal opportunity of having qualified wit-nesses present at the examination, and will also require, as far as practicable, the examination to be conducted in such a manner as not to subject the plaintiff to any unnecessary annoyance or exposure of her person.

The application, being within the terms of the statute, is granted, without costs.