THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DAVID McCARTY, Respondent-Appellant.

First District (5th Division)   No. 79-2232

Opinion filed June 27, 1980.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Mark A. Graff, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This case involves the issue of whether a person can refuse to answer questions before the grand jury when those questions are derived from evidence of a previously determined illegal search of that person.

On October 27, 1979, respondent was arrested and charged with possession of a controlled substance. (Ill. Rev. Stat. 1977, ch. 56½, par. 1402.) On November 27, 1979, the trial court granted respondent's motion to suppress the evidence illegally seized pursuant to that arrest, and granted the State's motion to have the cause stricken. Respondent was then subpoenaed to appear before the grand jury. He appeared, invoked his fifth amendment privilege and received immunity from prosecution under article 106 of the Illinois Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1977, ch. 38, par. 106—1 *et seq.*) Respondent persisted in his refusal to testify and was held in contempt of court. From this order of contempt, he now appeals.

The following issues are raised for our review: (1) that he had a right under the United States and Illinois constitutions (U.S. Const., amend. IV; Ill. Const. 1970, art. I, §6) to refuse to answer grand jury questions derived from his illegal search, and (2) that his same constitutional rights were

violated by his compelled appearance before the grand jury where the service of the subpoena resulted from the illegal search.

Respondent's first contention is comprised of a two-prong constitutional attack. The former is based upon his rights to be free from unlawful searches and seizure under the fourth amendment to the Federal constitution (U.S. Const., amend. IV) along with any derivative fruits of that activity; the latter is premised upon his right to be protected against invasion of privacy guaranteed under the Illinois Constitution. (Ill. Const. 1970, art. I, §6.) We first turn to the Federal constitutional challenge.

Briefly, respondent contends that the questions propounded by the grand jury are tainted because they directly result from his illegal search. As such, the exclusionary rule allegedly bars any inquiries based upon evidence stemming from that search.

We find that respondent's contention in this regard is answered by the holding in *United States v. Calandra* (1974), 414 U.S. 338, 38 L. Ed. 2d 561, 94 S. Ct. 613. In *Calandra*, the United States Supreme Court held that a witness summoned to appear and testify before a grand jury may not refuse to answer questions on the ground that they are based upon evidence obtained from an unlawful search and seizure. Respondent, recognizing the import of the *Calandra* decision, attempts to distinguish that case from the present situation. In *Calandra*, defendant moved for suppression of the evidence after the grand jury proceedings had commenced. Accordingly, the *Calandra* decision rested in part upon the fear of protracted interruptions of grand jury proceedings that would result from holding suppression hearings regarding evidence alleged to be unconstitutionally seized. This fear, respondent argues, cannot manifest itself in the present case because the suppression hearing was completed prior to initiation of the grand jury proceeding. Therefore, respondent argues that the *Calandra* holding is inapposite to the case at bar.

While this distinction has some merit, we note that the court in *Calandra* did not rely solely on this ground in finding the exclusionary rule inapplicable to grand jury proceedings. Throughout the opinion, the court emphasized that the minimal deterrent effect on the police by excluding any evidence of an illegal search was outweighed by the need for the effective and expeditious discharge of the grand jury's investigative duties. The court stated:

"In the context of a grand jury proceeding, we believe that the damage to that institution from the unprecedented extension of the exclusionary rule urged by respondent outweighs the benefit of any incremental deterrent effect. Our conclusion necessarily controls both the evidence seized during the course of an unlawful search and seizure and any question or evidence derived therefrom

(the fruits of the unlawful search.)" *Calandra*, 414 U.S. 338, 354, 38 L. Ed. 2d 561, 575, 94 S. Ct. 613, 623.

Permitting witnesses to invoke the exclusionary rule before the grand jury would hinder its fundamental objective of determining whether a crime has been committed and whether criminal proceedings should be instituted against anyone. Therefore, we reject respondent's assertion that his rights under the fourth amendment of the United States Constitution were violated when the trial court found his refusal to answer the grand jury's questions contemptuous.

The second prong of respondent's first contention is that his right to be free from invasion of privacy under the Illinois Constitution of 1970 precludes his compelled testimony before the grand jury on matters based upon his illegal search. The privacy provision of the Illinois Constitution provides in pertinent part:

> "The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, *invasions of privacy or interceptions of communications by eavesdropping devices or other means.*" (Emphasis added.) Ill. Const. 1970, art. I, §6.

According to respondent, his right to privacy under the State constitution is broader in scope than his rights under the fourth amendment of the Federal constitution, and thus places him outside of the holding in the *Calandra* case. Respondent's "expansion of rights" theory, if correct, is significant because the United States Supreme Court has recognized that the right to privacy may be invoked to refuse grand jury questioning when Congress has provided for special safeguards against situations in which those rights are violated. (*Gelbard v. United States* (1972), 408 U.S. 41, 33 L. Ed. 2d 179, 92 S. Ct. 2357.) In *Gelbard*, the court, relying specifically on title III of the Omnibus Crime Control Act (18 U.S.C. §§2515-2520 (1976)), found a congressional grant of privacy which mandated the exclusion of unlawfully gained electronic surveillance evidence at grand jury proceedings. There, the court warned of the two-fold invasion of privacy that would occur if such evidence were admissible.

> "In sum, Congress simply cannot be understood to have sanctioned orders to produce evidence excluded from grand jury proceedings by §2515. Contrary to the Government's assertion that the invasion of privacy is over and done with, to compel the testimony of these witnesses compounds the statutorily proscribed invasion of their privacy by adding to the injury of the interception the insult of compelled disclosure." *Gelbard*, 408 U.S. 41, 51-52, 33 L. Ed. 2d 179, 189, 92 S. Ct. 2357.

Drawing an analogy to *Gelbard*, respondent argues that his right to

privacy under our State constitution also requires that the exclusionary rule precludes questioning by the grand jury on matters derived from the unlawful search. In support of this proposition, respondent relies upon the commentary to the privacy provision of the constitution which reads in pertinent part:

> "Section 6 expands upon the individual rights which were contained in Section 6, Article II of the 1870 Constitution and the guarantees of the Fourth and Fourteenth Amendments to the United States Constitution.
>
>      * * *
>
> The protection against 'invasions of privacy' is new and is stated broadly." Ill. Ann. Stat., Ill. Const. 1970, art. I, §6, Constitutional Commentary, at 317 (Smith-Hurd 1977).

Respondent further argues that the exclusionary rule was specifically envisioned by the constitutional convention as a remedy for the invasion of privacy, and should be employed in the present case. The Illinois Constitution provides:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. * * * " Ill. Const. 1970, art. I, §12.

The commentary following this provision states:

> "Section 12 adds, for the first time, the assurance that a person who receives an injury or a wrong for 'invasion of privacy' shall have a remedy. * * * " Ill. Ann. Stat., Ill. Const. 1970, art. I, §12, Constitutional Commentary, at 556 (Smith-Hurd 1977).

Consequently, respondent maintains that the State must not be allowed to use evidence illegally obtained to later question the victim of that initial infringement.

Our analysis of this assertion necessarily turns upon the scope of the constitutional right to privacy under our State constitution. The courts of this State have not yet defined with certainty what privacy protections are afforded persons under article I, section VI of the constitution. In *Stein v. Howlett* (1972), 52 Ill. 2d 570, 574, 289 N.E.2d 409, 411, the court observed: "No limiting definition of the type of privacy is stated in the constitution." That observation was qualified, however, in *Illinois State Employees Association v. Walker* (1974), 57 Ill. 2d 512, 523, 315 N.E.2d 9, 15, where the court noted that the privacy provision apparently asserted nothing beyond protection from invasions of privacy by eavesdropping devices or other means of interception. In a dissent by Justice Ryan, joined by Justice Goldenhersh, the history of article I, section 6 was traced from the time that section was originally presented by the Bill of Rights Committee at the constitutional convention until the time it was enacted in final revised form. The dissenters in *Walker* concluded that the

background of the privacy section revealed an intent to create a right independent of the constitutional protection against searches and seizures and wiretapping. In reaching this conclusion, the dissenting justices found Bill of Rights Committee Delegate Dvorak's discussion of that section illustrative. Dvorak, commenting on the right to privacy, explained:

> " 'The cases that I have noted that deal with eavesdropping have pretty much intruded into the area of privacy because now the area of privacy that once was thought to be a complete area in and of itself mostly is the reason given for why eavesdropping, wire-tapping, and bugging activities are unconstitutional. *But there is the area of privacy still existing in very particular instances.* For instance, we have now the concept of a general information bank whereby the state government or the federal government can take certain pertinent information about each and every one of us based on, for instance, our social security number—know our weight, height, family ages, various things about us—and this is not acceptable to—was not acceptable—or the theory or the thought of such a thing—was not acceptable to the majority of our committee in approving section 6.' (Emphasis added.) 3 Proceedings 1525." *Walker*, 57 Ill. 2d 512, 533, 315 N.E.2d 9, 20.

We will not attempt to define each type of activity that is proscribed under article I, section VI. Whether or not this section creates a new substantive right broader in scope than the fourth amendment of the United States Constitution, it is apparent that the provision only prohibits unreasonable invasions of privacy. See *People v. Seymour* (1979), 80 Ill. App. 3d 221, 398 N.E.2d 1191.

In a later discussion at the convention Committee Chairman Gertz also attempted to outline the areas protected under a person's "zone of privacy." He stated:

> "We recognize in our report that in this kind of crowded, complicated world that there are necessarily a lot of invasions of privacy—that some of these invasions are reasonable. * * * And we think the court is also aware of what the individual requires, and the court will have a reasonable compromise between the needs of the state and the needs of the individual." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1535.

Consistent with these principles, the United States Supreme Court in *United States v. Calandra* (1974), 414 U.S.338, 38 L. Ed. 2d 561, 94 S. Ct. 613, balanced the privacy needs of individuals against the needs of the Government in having an effective grand jury and found the scales to tip in favor of the latter. The court stated:

> "Ordinarily, of course, a witness has no right of privacy before the grand jury. Absent some recognized privilege of confidentiality,

every man owes his testimony. He may invoke his Fifth Amendment privilege against compulsory self-incrimination, but he may not decline to answer on the grounds that his responses might prove embarrassing or result in an unwelcome disclosure of his personal affairs. (Citation omitted)" *Calandra*, 414 U.S. 338, 353, 38 L. Ed. 2d 561, 574, 94 S. Ct. 613, 622.

The court in *Calandra* evaluated respondent's privacy rights under the fourth amendment of the United States Constitution, not under the privacy provision of our State constitution. Nevertheless, we find the logic of that case equally compelling in the present matter. Grand jury questioning frequently invades one's privacy. To allow a person to refuse to answer those questions because they are based upon evidence of a previous unlawful search, however, would severely damage the investigative functions of the grand jury. Although the Illinois Constitution provides protection against invasions of privacy, such protection does not extend to reasonable infringements of privacy as in the instant case. Moreover, there is no evidence in the record that respondent was the victim of a unique or unreasonable invasion of his rights (*i.e.*, electronics surveillance). Therefore, the case of *Gelbard v. United States* (1972), 408 U.S. 41, 33 L. Ed. 2d 179, 92 S. Ct. 2357, and respondent's analogy between that case and the Illinois privacy provision is not tenable. Consequently, we reject respondent's contention that the Illinois Constitution requires the application of the exclusionary rule to the grand jury proceedings.

Respondent's final contention relates to the alleged improper service of the grand jury subpoena which resulted from his illegal search. This contention is inextricably tied to his first assertion of error and likewise fails. Because we have decided that the trial court properly demanded respondent's testimony at the grand jury proceeding, it is fundamental that his appearance there was equally proper even though it too resulted from his illegal search. The avenue of inquiry pursued by the grand jury was proper; it is therefore clear that respondent's rights were not infringed by service of the subpoena. Consequently, we find this argument to be without merit.

For the foregoing reasons, the order of the circuit court holding respondent in contempt of court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.