No. 3--01--0292

_________________________________________________________________

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

ELIZABETH ANN PUTERBAUGH, ) Appeal from the Circuit Court

Petitioner-Appellee, ) for the 10th Judicial Circuit,

) Peoria County, Illinois

) 

v. ) No. 94--D--878

) 

DAVID LESLIE PUTERBAUGH, ) Honorable

Respondent-Appellant. ) David J. Dubicki

) Judge, Presiding _______________________________________________________________

JUSTICE BRESLIN delivered the opinion of the court: 

_________________________________________________________________

Petitioner Elizabeth Puterbaugh filed this action against respondent David Puterbaugh requesting an increase in the amount of child support for their children.  During discovery, Elizabeth requested a copy of David’s antenuptial agreement that he had executed with his current wife, Katherine.  David and Katherine refused to comply with the court's discovery order, claiming that their antenuptial agreement was protected by marital privilege and by a constitutional right to privacy, and that the requested information was duplicative of information they had already provided.  The trial court rejected their arguments and found David and Katherine in indirect civil contempt, sanctioning them $500 and $50 per day, respectively, until they complied with the order.  David and Katherine appealed.  We affirm and hold that antenuptial agreements are not protected by the marital privilege or by a right to privacy.  Because an issue remains as to the relevance of the requested document, we remand for an 
in
 
camera
 inspection by the trial court as to the document’s relevance.  Finally, 
we vacate the contempt order and sanctions as David and Katherine’s refusal to comply was a good faith test of the court’s discovery order. 

FACTS

Elizabeth and David Puterbaugh were married in 1988.  They have two children, Walter, age 12, and George, age 1l.  Elizabeth and David divorced in 1996; Elizabeth was granted physical custody of the children.  David was ordered to pay $3,000 per month in permanent child support and pay other expenses, such as private school tuition and medical costs.  Thereafter, David and Katherine decided to marry.  They signed an antenuptial agreement in contemplation of that marriage. 

Several years later, Elizabeth filed a motion requesting that the court increase the amount of David's child support payments.  Accordingly, Elizabeth served David with several requests for production of documents, seeking David's financial information from 1996 to the present.  One of Elizabeth's requests for production sought a copy of David and Katherine’s antenuptial agreement.  David objected, and shortly thereafter, Katherine intervened.  After a hearing on Elizabeth's motion, the court ordered that one page of the antenuptial agreement that contained a financial exhibit be produced.  When David and Katherine failed to produce the exhibit, they were held in contempt of court and 
sanctioned $500 and $50 per day, respectively, until they complied with the court's order. Their motion to stay enforcement of the contempt order was granted by the trial court, and they appealed. 

ANALYSIS

On appeal, David and Katherine argue that their antenuptial agreement was protected by marital privilege, that production of the requested exhibit would violate their right to privacy, and that the contempt order and sanctions should be vacated.

We review questions of law 
de
 
novo
. See 
In re Marriage of Bonneau
, 294 Ill. App. 3d 720, 691 N.E.2d 123 (1998). 

With regard to David and Katherine's first argument, they claim that their antenuptial agreement is privileged and that disclosure of the exhibit would violate their right to privacy in their marriage.  In support of their argument, they assert
 that the agreement was prepared and executed "in contemplation of marriage" and that they were "effectively spouses" at the time of its execution. See 750 ILCS 10/2 (West 2000).  
David and Katherine contend that because marriage has been given broad constitutional protections as a fundamental right and because the antenuptial agreement concerns matters related to their marriage, the required disclosure of the antenuptial agreement would violate their privacy rights.  

Section 8-801 of the Code of Civil Procedure (Code) (735 ILCS 5/8-801 (West 2000)) sets forth the marital privilege.  It states in part that "in all actions, husband and wife may testify for or against each other, provided that neither may testify as to any communication or admission made by either of them to the other or as to any conversation between them during marriage***."  The marital privilege is intended to preserve the privacy of communications between spouses. 
In re Baby Boy Butt
, 76 Ill. App. 3d 587, 395 N.E.2d 1 (1979).  T
he privilege has not been extended to testimony regarding conversations and transactions occurring prior to marriage. 
Otis v. Spencer
, 102 Ill. 622 (1882).
 

Although David and Katherine argue that the antenuptial agreement is privileged, their agreement does not fall under the plain meaning of the marital privilege statute.  Because the language of section 8-801 (735 ILCS 5/8-801 (West 2000)) provides that the marital privilege applies to communications "during  marriage," the privilege is inapplicable in this case because David and Katherine were not married when the agreement was executed.  As a result, David and Katherine's argument must fail. See 
In re Marriage of Beyer & Parkis
, 324 Ill. App. 3d 305, 753 N.E.2d 1032 (2001) (noting that words are to be given their ordinary meaning when a court interprets a statute). 
We hold that David and Katherine's antenuptial agreement was not protected under the marital privilege and the financial exhibit was not excluded from discovery on that ground.  

David and Katherine argue that their right to privacy in their marriage under the constitutions of the United States and Illinois (Ill. Const. 1970, art. I, §6 (West 2000)) would be violated if they were forced to produce the financial exhibit.  If this court determines, however, that their constitutional right to privacy does not extend to antenuptial agreements, they argue that the exhibit is duplicative of the financial information that Elizabeth already has.  

We do not agree with David and Katherine's argument that because antenuptial agreements address intimate aspects of marriage, they are protected under a right to privacy.  The guarantees of privacy emanating from the United States Constitution protect personal rights which are fundamental in the concept of ordered liberty. 
In re Roger B.
, 85 Ill. App. 3d 1064, 407 N.E.2d 884 (1980).  While Illinois recognizes a zone of privacy under its constitution, the broader protections it affords are limited to unreasonable invasions of privacy. 
People v. McCarty
, 86 Ill. App. 3d 130, 407 N.E.2d 971 (1980).  The confidentiality of an antenuptial agreement, however, is not a right which is fundamental in the concept of ordered liberty nor does it rise to the level of other protected rights such as the right to marry or the right to procreate. 
 See 
Nicpon v. Nicpon
, 145 Ill. App. 3d 464, 495 N.E.2d 1193 (1986) (noting that not every classification relating to the incidents of marriage involve the intensely personal decisions the Supreme Court found to be fundamental).  
Accordingly, we hold that the financial information contained in David and Katherine's antenuptial agreement is not protected by the couple's constitutional right to privacy in their marriage.   

 Although we reject the couple's constitutional argument, we do agree that an issue still exists as to whether the exhibit was relevant in light of the extensive financial information David has already provided.  Because the relevancy of the information has not been determined by the trial court, we remand for an 
in
 
camera
 hearing for that determination. See 
In re Estate of Bagus
, 294 Ill. App. 3d 887, 691 N.E.2d 401 (1998) (noting that evaluating the relevance of discovery requests is a judicial function). 

We now address David and Katherine's third argument that the contempt order and sanctions should be vacated because their refusal to produce the antenuptial agreement was a good faith test of the validity of the discovery order.  

A contempt proceeding is an appropriate means for testing the validity of a discovery order. 
In re Marriage of Daniels
, 240 Ill. App. 3d 314, 607 N.E.2d 1255 (1992).
  Our review of the record indicates 
that David and Katherine's refusal to comply with the discovery order was based on their legitimate assertion that the antenuptial agreement was privileged.  
David and Katherine's lack of success with their privilege argument does not indicate a lack of good faith in asserting it. 
See 
Chicago Trust Co. v. Cook County Hospital
, 298 Ill. App. 3d 396, 698 N.E.2d 641 (1998)
 (contempt order vacated even though privilege was not upheld). 
 
That they were willing to risk an order of contempt being entered against them demonstrates that their refusal to comply was a good faith effort to secure an interpretation of the marital privilege. See 
People ex rel. Birkett v. City of Chicago
, 292 Ill. App. 3d 745, 686 N.E.2d 66 (1997).  
Accordingly, 
we hold that the contempt order and sanctions should be vacated. 

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed in part, remanded in part and vacated in part.

Affirmed in part, remanded in part and vacated in part.

LYTTON, P.J., and HOMER, J., concur.