# Illinois Official Reports

## Appellate Court

***Kaull v. Kaull*, 2014 IL App (2d) 130175**

| | |
|---|---|
| Appellate Court Caption | MARY K. KAULL, as Trustee of the Barbara B. Kaull Trust u/a/d July 17, 2007, Petitioner-Appellee, v. SARAH KAULL, Respondent-Appellant (Mark James Kaull, Respondent-Appellant; Ryan Donald Schrader, a Minor, and Elida Ochoa, as Mother and Next Friend of Ryan Donald Schrader, Respondents). |
| District & No. | Second District<br>Docket No. 2-13-0175 |
| Filed<br>Modified upon denial of rehearing | December 22, 2014<br><br>January 27, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action by the trustee of decedent's trust seeking to determine the beneficiaries of the trust, respondent was properly held in contempt for refusing to submit a DNA sample pursuant to Supreme Court Rule 215 for testing to determine whether he was decedent's grandson and a beneficiary of her trust, but based on the finding that respondent acted in good faith in appealing the trial court's decision, the order finding respondent in contempt was vacated. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 11-MR-594; the Hon. Lisa R. Fabiano, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded. |

Counsel on Appeal

Richard B. Kirk and Michael J. Schirger, both of Schirger Law Offices, LLC, of Rockford, for appellant.

Laura D. Mruk, of WilliamsMcCarthy LLP, of Rockford, for appellee Mary K. Kaull.

Nicholas O. Meyer, of Meyer & Horning, P.C., of Rockford, for appellees Elida Ochoa and Ryan Donald Schrader.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Clifford W. Berlow, Assistant Attorney General, of counsel), for appellee Illinois Attorney General.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1 This action was brought by Mary K. Kaull (Mary), as the trustee of the Barbara B. Kaull Trust, to identify beneficiaries of the trust. Respondent Mark James Kaull (Mark James) was held in contempt of court for his refusal to submit a DNA sample, which the trial court ordered pursuant to Illinois Supreme Court Rule 215 (eff. Mar. 28, 2011) in order to determine whether respondent Ryan Donald Schrader (Ryan) and Mark James have the same biological father, Mark Kaull. On appeal, Mark James argues that he acted in good faith in refusing to submit a DNA sample on the grounds that: (1) Rule 215 is facially unconstitutional because it no longer requires a showing of "good cause"; (2) section 9(a) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/9(a) (West 2010)) applies to this case to the exclusion of Rule 215; (3) inherited characteristics are not "physical conditions" within the meaning of Rule 215; and (4) the motion and the trial court's order for DNA testing did not comply with Rule 215. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND
¶ 3 The record reflects that Barbara B. Kaull passed away on March 16, 2011. Prior to her death, Barbara established the Barbara B. Kaull Trust, which stipulated that after her death the trust assets were to be divided "into separate shares equal in value, one for each then living child of mine and one for the descendents, collectively, of each deceased child of mine." Barbara had three children: Mary, Sarah, and Mark Kaull. Mary became trustee of the trust on April 13, 2011. Mark Kaull predeceased Barbara. There is no dispute that Mark

James is Mark Kaull's son. At issue in this case is whether Mark James is Mark Kaull's only son.

¶ 4     This case began on September 29, 2011, when Mary, in her capacity as trustee, filed a "Petition for Instructions" seeking a judicial determination as to the proper beneficiaries and administration of the trust. In the petition Mary stated that there was a *bona fide* doubt as to whether Mark James is Mark Kaull's only child. Mary alleged that a *bona fide* doubt existed because on March 4, 2010, the Texas Attorney General filed a "Petition to Establish the Parent-Child Relationship" between Mark Kaull and Ryan. The Attorney General alleged that Mark Kaull was Ryan's father. A hearing on the petition was scheduled for August 6, 2010. However, Mark Kaull died on April 3, 2010. On the date the petition was to be heard the Attorney General dismissed the petition without prejudice.

¶ 5     Elida Ochoa, Ryan's mother, responded to the petition on behalf of her son. In the response, Elida alleged that Ryan was Mark Kaull's son and Mark James' brother and therefore an heir of Barbara and a beneficiary of the Barbara B. Kaull Trust. She admitted that she had been married to Ralph Hans Schrader and that Ralph was listed as Ryan's father on his birth certificate. However, she stated that she and Ralph had been living separate and apart since June 2008 and were divorced on May 20, 2009. Ryan was born on August 19, 2009, in Texas.

¶ 6     Elida attached several exhibits to the response, including her affidavit in which she alleged that Mark Kaull was Ryan's biological father. Elida also stated that a DNA home paternity test sent to the Identigene DNA Testing Center in Salt Lake City, Utah (Identigene), excluded Ralph and confirmed Mark Kaull as Ryan's biological father. A copy of the report was attached to the response.

¶ 7     Also attached to the response was a handwritten notarized document entitled "Deposition by Ralph Schrader," which he signed. In the document, Ralph stated that he was married to Elida when Ryan was conceived but had not been living with her since June 2008. Ralph stated that he lived in Illinois and Elida lived in Texas. Ralph also stated that "on or about November 12, 2009" he participated in a DNA test with Ryan and Elida, that Mark Kaull was also present, and that Mark also conducted a similar test. Ralph stated that the results of his DNA test indicated that he could not be Ryan's natural father. Ralph further stated that Mark Kaull told him that he had a sexual relationship with Elida and that the DNA test indicated that he was Ryan's natural father. Ralph said that Mark Kaull told him that he was paying biweekly child support for Ryan and intended to "fulfill all usual fatherly duties."

¶ 8     The DNA report from Identigene stated that 99.9% of Caucasian men were excluded from paternity and that Mark Kaull could not be excluded as Ryan's father. The report also stated that the "transport and testing" were not performed in compliance with established chain-of-custody guidelines.

¶ 9     Elida also attached a handwritten note to the response to the petition. The note was purportedly signed by Mark Kaull and stated:

> "I, Mark M. Kaull, am giving Elida Schrader $500 per month for the support of our son Ryan D. Schrader. Sincerely, Mark Kaull."

¶ 10     Mark James also filed a response to the petition. In his response, he denied that Ryan was Mark Kaull's child. He also alleged that he was Mark Kaull's only child.

¶ 11        On February 24, 2012, Mark James filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure. 735 ILCS 5/2-615(e) (West 2010). In the motion, Mark James argued that Mary's petition put Ryan's parentage at issue and therefore the provisions of the Parentage Act applied. 750 ILCS 45/9(a) (West 2010). He argued that Mary did not have standing under the Parentage Act, because she did not have custody of Ryan and was not providing financial support to him. He also argued that he was entitled to judgment on the pleadings because Elida had not rebutted the presumption of paternity by clear and convincing evidence as required under the Parentage Act. 750 ILCS 45/5(b) (West 2010). He requested that the trial court "instruct that petitioner, Mary K. Kaull, and respondents Sarah Kaull and Mark James Kaull, are the only beneficiaries of the Barbara B. Kaull Trust, and [direct] petitioner to distribute the trust estate according to the terms of the trust."

¶ 12        Mary filed a response to Mark James' motion for judgment on the pleadings. In her response, she asserted that her petition was proper and that the Parentage Act did not apply to a determination of heirship. Elida and Ryan also filed a response to Mark James' motion as well as a counterpetition for declaratory judgment. On May 8, 2012, the trial court denied Mark James' motion and found that Mary had standing to bring her petition for instructions.

¶ 13        On November 30, 2012, Elida and Ryan filed a motion for a DNA test pursuant to Rule 215. In the motion, they stated that a *bona fide* doubt existed as to whether Mark Kaull was the biological father. Elida and Ryan also alleged that sufficient facts existed to establish good cause to order Mary and Mark James to submit to DNA testing. They further alleged that a positive DNA test would be substantial proof that Mark James and Ryan were biological siblings. Mary and Mark James were granted leave to file a response on or before January 11, 2013. Argument on the motion was scheduled for January 25, 2013.

¶ 14        On January 23, 2013, Mark James filed an objection to Elida and Ryan's motion for DNA testing as well as a "Notice of Filing Rule 19 Notice of Claim of Unconstitutionality." The notice was sent to the attorneys for Mary, Mark James, and Ryan and the Illinois Attorney General. Mark James objected to the motion on the following grounds:

        1. The motion does not suggest the identity of the examiner, nor does it set forth the examiner's specialty or discipline;

        2. The motion does not state that counsel have attempted to resolve this dispute prior to court intervention as Illinois Supreme Court Rule 201(k) (eff. Jan. 1, 2013) mandates;

        3. Even if otherwise sufficient, the evidence in this matter is not persuasive and credible enough to support it;

        4. Rule 215 does not apply to paternity issues, because a familial relationship is not a "physical condition"; and

        5. Rule 215 is unconstitutional on its face because it no longer requires that movants show even good cause.

¶ 15        On January 25, 2013, the trial court heard arguments on the motion for DNA testing. Counsel for Ryan and Elida argued that the application of Rule 215 in paternity actions had been approved by the appellate and supreme courts. Counsel also argued that the rule no longer set out a requirement of good cause or a burden of proof and that it just gave the court discretion on whether to order an examination. Counsel argued that it was unclear whether

courts would still require a "good cause" showing, but if there was such a requirement there was enough evidence here to warrant compelling both Mary[1] and Mark James to submit to a DNA test.

¶ 16    Counsel for Mark James acknowledged that "the court most likely is bound by rulings of the supreme court that [Rule] 215 does authorize trial courts to order DNA tests." However, he maintained that Rule 215 was unconstitutional "under the Illinois Constitutional invasions of privacy without any showing of cause whatsoever." Counsel argued alternatively that the standard that should be applied is "credible, persuasive evidence" pursuant to *Jarke v. Mondry*, 2011 IL App (4th) 110150. Counsel argued that the evidence was insufficient because in her response to the petition Elida admitted facts that gave rise to a presumption that the "legally presumed father here" was Ralph. Counsel added that the DNA test results submitted by Elida were not admissible, because there was no chain of custody. The trial court commented that Mark James' argument would create a situation where a person had to prove that he was the biological father before he could have a DNA test. Counsel argued that, as in *Jarke*, Elida and Ryan were relying on Mark Kaull's statements to others that he was Ryan's father, which were hearsay. The trial court ruled that the statements were admissible and that counsel could cross-examine the witnesses on whether the statements were actually made.

¶ 17    The trial court asked Mark James' counsel whether he was arguing that under Rule 215 the court had discretion to order a DNA test, and counsel replied in the affirmative. The trial court, after conferring with counsel, stated that it would follow *Jarke*, as it was the only case addressing the issue of what type of showing was required by Rule 215 for ordering a DNA test.

¶ 18    Counsel for Ryan and Elida argued that the evidence submitted in support of the motion for DNA testing had not been rebutted and that it was ample to order the test. Counsel also argued that Mark James' fourth-amendment argument was not supported by case law other than criminal cases. Counsel argued that it was a general rule that a DNA test performed by swabbing a person's mouth was not unreasonable. With respect to Mark James' Rule 201(k) argument, the trial court concluded that ordering the test would seem to be "just an exercise in futility" given the fact that Mark James' counsel had stated that he was going to appeal if the court ordered the test. With respect to the technical requirements of Rule 215 (naming the examiner, etc.), counsel for Ryan and Elida stated that there was no prejudice and that he would submit an order that complied with Rule 215.

¶ 19    The trial court ruled that it had the discretion to order a DNA test in this situation. The court summarized the evidence and found that it was ample to order the test despite the discrepancies. The court directed the parties to submit an order that fulfilled the requirements of Rule 215. Counsel for Mark James stated, "I do expect we'll refuse to take the test, and I'll ask you, you know, at our next hearing, to give us a good faith contempt and we'll appeal it."

¶ 20    On February 1, 2013, Mark James refused to comply with the court's order that he submit to the collection of a DNA sample. The court found him in indirect civil contempt and ordered a penalty of $100 plus $1 per day until his compliance with the order. The court found that his refusal to comply was made in good faith to pursue an appeal of the contempt

---

[1]Although Mary and Mark Kaull have the same biological mother, Barbara Kaull, they do not share the same biological father. Despite that undisputed fact, she agreed to submit a DNA sample.

- 5 -

order. Mark James then filed a timely notice of appeal. On February 8, 2013, Mark James filed a notice to the Illinois Attorney General pursuant to Illinois Supreme Court Rule 19 (eff. Sept. 1, 2006) that he intended to challenge the constitutionality of Rule 215. We granted the Attorney General's motion to intervene on April 13, 2013.

¶ 21                              II. ANALYSIS

¶ 22     We are called upon to determine whether Mark James was justified in refusing to obey the trial court's order requiring him to provide a DNA sample pursuant to Rule 215. Discovery orders are not final orders and are not ordinarily appealable. However, the correctness of a discovery order may be tested through contempt proceedings. *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001). We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010). Review of the trial court's contempt finding requires our review of the order on which it was based. Discovery orders are ordinarily reviewed for a manifest abuse of discretion. *Maxwell v. Hobart Corp.*, 216 Ill. App. 3d 108, 110 (1991). This appeal involves a constitutional challenge to Rule 215 as well as issues of construction of the Parentage Act. These are matters of law, which we review *de novo*. *Clark v. Illinois State Board of Elections*, 2014 IL App (1st) 141937, ¶ 15 (constitutionality is a pure question of law, which we review *de novo*); *Nelson v. Kendall County*, 2014 IL 116303, ¶ 22 (issues of statutory construction are reviewed *de novo*).

¶ 23     We are also called upon to decide whether, assuming we reject Mark James' constitutional claim and determine that Rule 215 applies in this case, the trial court abused its discretion in ordering a DNA test.

¶ 24     Before addressing the merits of this appeal, we note that Mark James failed to strictly comply with Rule 19 in the trial court. That rule requires that in any cause challenging the constitutionality of a statute, ordinance, administrative regulation, or other law affecting the public interest, where the State or political subdivision, agency, or officer affected is not already a party, the litigant raising the constitutional issue shall serve an appropriate notice on the Attorney General. See Ill. S. Ct. R. 19(a) (eff. Sept. 1, 2006). The purpose of the notice is to afford the Attorney General the opportunity, but not the obligation, to intervene for the purpose of defending the constitutionality of the law that is being challenged.

¶ 25     Mark James' purported notice pursuant to Rule 19 in the trial court was mailed to the Attorney General on January 23, 2013, for a hearing that was scheduled for January 25, 2013. Illinois Supreme Court Rule 12(c) (eff. Jan. 4, 2013) provides that "[s]ervice by mail is complete four days after mailing." Local rule 10.03 of the Seventeenth Judicial Circuit provides that "service of notice of hearing must be perfected by 4:00 P.M. of the second court day preceding the hearing of the motion." 17th Judicial Cir. Ct. R. 10.03 (Oct. 1991). Strict compliance with Rule 19 is generally required. *Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 116 (2004). In this case, it is clear that Mark James did not strictly comply with the rule, which may result in forfeiture. *Id.* at 119. However, failure to comply with Rule 19 does not deprive this court of jurisdiction to consider the constitutional issue. *Id.* In this case, although Mark James failed to comply with Rule 19's notice requirements for the January 25, 2013, hearing, he did serve an appropriate notice on the Attorney General for purposes of this appeal. Therefore, in the exercise of our discretion we will consider the merits of this appeal.

¶ 26                                A. Federal and State Constitutional Violations

¶ 27        Mark James argues that Rule 215 is unconstitutional under both the federal and Illinois constitutions. The constitutionality of Rule 215 is an issue of first impression. In fact, our research has not uncovered a single case from any jurisdiction holding that a state supreme court discovery rule violates the fourth amendment. Here, Mark James claims that Rule 215 allows the court to order searches, seizures, and (with respect to the Illinois Constitution) invasions of privacy without a showing of any cause whatsoever. He argues that it would be improper for this court to read into the rule a "good cause" or "persuasive and credible evidence" standard, because its drafters clearly intended that no such showing is required.

¶ 28        Supreme court rules are adopted to facilitate the work of the courts and they have the force of law. *Harris v. Annunzio*, 411 Ill. 124, 127 (1952). There is a presumption that the rules will be obeyed and enforced as written. *People v. Glasper*, 234 Ill. 2d 173, 189 (2009). Toward this end, we interpret supreme court rules in the same manner as statutes. See Ill. S. Ct. R. 2(a) (eff. May 30, 2008); *People v. Blair*, 2011 IL App (2d) 070862, ¶ 33. In analyzing Rule 215, our task is to ascertain and give effect to the intention of the drafters. *People v. Thompson*, 238 Ill. 2d 598, 606 (2010). The best indication of intent is the language of the rule, given its plain and ordinary meaning. *Id.* (citing *People v. Marker*, 233 Ill. 2d 158, 165 (2009)). When a rule's language is clear and unambiguous, it will be applied as written without resort to aids of construction. *Id.* (citing *People v. Campbell*, 224 Ill. 2d 80, 84 (2006)). Our interpretation is *de novo*. *Id.* (citing *People v. Suarez*, 224 Ill. 2d 37, 41-42 (2007)).

¶ 29        As with statutes, there is a strong presumption that a court rule is constitutional, and the party challenging its constitutionality bears the burden of clearly establishing that the rule violates the constitution. See *People v. Kitch*, 239 Ill. 2d 452, 466 (2011). We must construe the challenged rule in a manner that upholds its constitutionality, if reasonably possible. See *People v. Hollins*, 2012 IL 112754, ¶ 13. A facial challenge is the most difficult to make. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305 (2008). In a facial challenge, the party must establish that no set of circumstances exists under which the rule would be valid. *United States v. Stevens*, 559 U.S. 460, 472 (2010). Illinois Supreme Court Rules 201 through 224, the rules of discovery, are designed to be "flexible and adaptable to the infinite variety of cases and circumstances appearing in the trial courts." *Monier v. Chamberlain*, 35 Ill. 2d 351, 355 (1966). The objective under the discovery rules is to obtain the " 'expeditious and final determination of controversies in accordance with the substantive rights of the parties.' " *Sarver v. Barrett Ace Hardware, Inc.*, 63 Ill. 2d 454, 460 (1976) (quoting *Monier*, 35 Ill. 2d at 357).

¶ 30        Mark James advances the theory that the 1996 amendment to Rule 215, which eliminated the "good cause" requirement for seeking a physical or mental examination of a party, is unconstitutional because it intrudes without restriction on a fundamental right–the right to be free from unreasonable searches and seizures under the fourth amendment to the federal constitution and the right to privacy under article I, section 6, of the Illinois Constitution. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The Attorney General argues that Mark James cannot mount such a challenge, because the protections of the fourth amendment as well as the right to privacy under the Illinois Constitution apply only to state action. *People v. Phillips*, 215 Ill. 2d 554, 566 (2005); *People v. Clements*, 80 Ill. App. 3d 821, 824 (1980). The Attorney General relies on *Union Oil Co. of California v. Hertel*, 89 Ill. App. 3d 383

(1980), which held that the protections of the fourth amendment and the Illinois Constitution against unreasonable searches and seizures did not apply to a civil discovery order in an action between private parties. *Id.* at 386. The Attorney General also cites a number of cases from other jurisdictions in which courts have declined to apply the protection of the fourth amendment to civil discovery. For example, one federal court has observed that "[i]t strains common sense and constitutional analysis to conclude that the fourth amendment was meant to protect against unreasonable discovery demands made by a private litigant in the course of civil litigation." *United States v. International Business Machines Corp.*, 83 F.R.D. 97, 102 (S.D.N.Y. 1979). The Attorney General argues that applying the fourth amendment to civil discovery in private litigation "would undermine the core principles of modern civil discovery."

¶ 31 In response, Mark James argues that none of the cases that Elida, Ryan, and the Attorney General rely on concern a power reserved to the court to order invasions into a fundamental right. He contends that his focus is not on "depositions, interrogatories and requests-to-produce," which do not require court orders for their effect. Instead, he argues that "giving courts the power to command people to submit to physical and mental examinations without a good reason is state action at its worst."

¶ 32 A state's mere acquiescence to a private action does not convert it to a state action. *In re Marriage of Braundmeier*, 201 Ill. App. 3d 14, 17 (1990). However, in his facial challenge, Mark James is not contesting the trial court's order itself. In fact, during the hearing on the Rule 215 motion he conceded that, under Rule 215 as presently written, the trial court had the authority and the discretion to order the DNA test. Instead, his argument is that the Illinois Supreme Court, by removing the "good cause" requirement, rendered the rule unconstitutional on its face.

¶ 33 There is no question that our supreme court is a state actor. The question before us is whether the court's action in amending Rule 215 was sufficiently significant so that Mark James can invoke the protection afforded by the fourth amendment. See *USA I Lehndorff Vermoegensverwaltung GmbH & Cie v. Cousins Club, Inc.*, 64 Ill. 2d 11, 18 (1976). In Illinois, "once a lawsuit has been filed, and all parties have appeared, the pretrial search for matters relevant to the pending litigation is controlled by discovery rules promulgated" by our supreme court. *Bruske v. Arnold*, 44 Ill. 2d 132, 135 (1969). Under the Illinois Constitution, the Illinois Supreme Court "retains primary constitutional authority over court procedure." *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1998).

¶ 34 In *Kunkel*, the Illinois Supreme Court considered the constitutionality of section 2-1003(a) of the Code of Civil Procedure (735 ILCS 5/2-1003(a) (West 1994)) as amended by the Civil Justice Reform Amendment of 1995 (Pub. Act 89-7 (eff. Mar. 9, 1995)). Section 2-1003(a) provided that any party who alleged a claim for bodily injury or disease shall be deemed to waive any privilege of confidentiality with his or her health care provider. *Kunkel*, 179 Ill. 2d at 523. The section also provided that, upon request of the other party, the party claiming injury shall sign and deliver consent forms authorizing health care providers to disclose records and to engage in *ex parte* conferences with the requesting party's attorneys. *Id.* at 523-24. In *Kunkel*, the defendants argued that the provisions of section 2-1003(a) "[did] not run afoul of the prohibition of unreasonable invasions of privacy because, according to defendants, that prohibition 'does not apply to actions between private parties.' " *Id.* at 539. The supreme court rejected this argument, stating: "However, section 2-1003(a) provides for

state action as the means to compel the disclosure of constitutionally protected medical information: where a party fails to tender a consent the trial court may either dismiss the lawsuit or enter an order authorizing disclosure of the requested medical information." *Id*. The supreme court did not cite any precedent for this holding. However, it is clear from the United States Supreme Court's decision in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982), that "[w]hile private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute *obviously is the product of state action*." (Emphasis added.) *Id*. at 941. While the *Lugar* decision involved a "color of state law" issue in a civil rights case pursuant to 42 U.S.C. § 1983, the Court stated, "[i]f the challenged conduct of respondents constitutes state action as delimited by our prior decisions, then that conduct was also action under color of state law and will support a suit under § 1983." *Id*. at 935. The *Lugar* Court stressed the important role the "state action" requirement plays in preserving "an area of individual freedom by limiting the reach of federal law and federal judicial power." *Id*. at 936. Additionally, the "state action" requirement "avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." *Id*. The Court explained that its past cases had "insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." *Id*. at 937. The Court outlined a two-part approach to the issue of fair attribution:

> "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. *** Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id*.

¶ 35    Mark James' argument for this court to find state action barely survives forfeiture. He cites no case law from any jurisdiction applying the fourth amendment to a discovery rule or a discovery order in a civil case between private parties. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (appellate brief shall contain the appellant's argument with citation of the authorities relied upon). Mark James' argument is textual. He argues simply that, because Federal Rule of Civil Procedure 35 and the rules in 44 states require "good cause" for a physical or mental examination to be ordered, Illinois Rule 215 must be unconstitutional.

¶ 36    Elida, Ryan, and the Attorney General cite *Hertel* for the proposition that the fourth amendment does not apply to discovery orders in civil actions between private parties. In reply, Mark James argues that *Hertel* is "weak" because: (1) it has not been relied upon by any other court; and (2) it involved an order for a "handwriting sample," which is not a search under the fourth amendment.

¶ 37    Our own research has discovered a number of Illinois cases where reviewing courts have applied the fourth amendment to discovery orders in civil cases between private parties. Most of those cases were decided before the modern rules of discovery were adopted in 1963. *Monier v. Chamberlain*, 31 Ill. 2d 400, 403 (1964). *Monier* involved a direct appeal to the Illinois Supreme Court from an order holding the defendants in contempt for their failure to produce documents for inspection and copying. The appeal was taken directly to the Illinois Supreme Court on the ground that the order violated due process and the state and federal constitutional guarantees against unreasonable searches and seizures. *Id*. at 401. The

defendants relied upon several cases in which the Illinois Supreme Court had reviewed contempt orders on direct review under " 'procedural doctrines which had exalted the role of a trial as a battle of wits and subordinated its function as a means of ascertaining the truth.' " *Id.* (quoting *Krupp v. Chicago Transit Authority*, 8 Ill. 2d 37, 41 (1956)). The court then stated, "whatever the judicial climate that prevailed when they were decided, the cases relied upon do not indicate the existence of a substantial constitutional question in the present case." *Id.*

¶ 38    The *Monier* court discussed a case from 1890, *Lester v. People*, 150 Ill. 408, 419 (1890), which involved an order that was alleged to be unconstitutional because it required the surrender of "books of a party" to a third person for an indefinite period of time. Next, the *Monier* court discussed *Denison Cotton Mill Co. v. Schermerhorn*, 257 Ill. 128 (1912), which involved an order that was allegedly too broad, in that it called for the production of books and records that were not pertinent or material to the issues in that case. *Monier*, 31 Ill. 2d at 402. In 1928, the supreme court set aside a contempt order because there was no showing of materiality and the order left to the attorneys' discretion what they would inspect and what was material or immaterial to the issue. *Carden v. Ensminger*, 329 Ill. 612, 622 (1928).

¶ 39    In citing *Carden*, *Lester*, and *Denison*, the *Monier* court stated that "[t]hese cases demonstrate that even before the adoption of the Civil Practice Act in 1933, the boundaries of the area constitutionally protected against unreasonable search and seizure were fixed at the limits of relevance." *Monier*, 31 Ill. 2d at 402. The *Monier* court also explained that in *Krupp* "we pointed out that discovery before trial 'presupposes a range of relevance and materiality which includes not only what is admissible at the trial, but also that which leads to what is admissible at trial.' " *Id.* at 403 (quoting *Krupp*, 8 Ill. 2d at 41). The court declined to consider the issue concerning the scope of discovery in *Monier* because it did not present any debatable constitutional issue, and it transferred the case to the appellate court. *Id.* at 404-05. The court reiterated what it had previously held regarding discovery rules:

> "[W]e said that the discovery rules 'were adopted as procedural tools to effectuate the prompt and just disposition of litigation, by educating the parties in advance of trial as to the real value of their claims and defenses. As noted by legal scholars, those rules will suffice for present needs if lawyers and judges will use them with an understanding of that purpose.' " *Id.* at 403 (quoting *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 236 (1957)).

¶ 40    A few years after *Monier*, the supreme court again declined to consider a claim that discovery orders violated the "constitutional rights against unreasonable searches and seizures, because they deprived defendant of its property without due process of law, and because their entry was attended by a lack of procedural due process with respect to notice and hearing." *People ex rel. General Motors Corp. v. Bua*, 37 Ill. 2d 180, 195 (1967). In *Bua*, the court said that it would not consider the constitutional attack, noting that what it said in *Monier* applied. *Id.* The *Bua* court, however, exercised its discretionary jurisdiction to consider the challenged orders. *Id.* at 193. The court said that it hoped that by doing so the bench and bar would be encouraged to "wisely use the tools of discovery to illuminate the actual issues in the case rather than to harass and obstruct the opposing litigant." *Id.*

¶ 41    It seems clear from a reading of *Monier* and *Bua* that the supreme court has repeatedly held that questions regarding invasions of privacy, overbreadth, and relevancy with respect to discovery orders are to be resolved by trial and reviewing courts without resorting to fourth

amendment analysis. The court's reasoning in *Monier* and *Bua* is consistent with the well-established rule that reviewing courts will not address constitutional issues that are unnecessary for the disposition of the case. *People v. Waid*, 221 Ill. 2d 464, 473 (2006).

¶ 42 We recognize that on occasion appellate courts have considered constitutional challenges to discovery orders. Our research has discovered two such cases since *Monier* and *Bua*. In *Dufour v. Mobil Oil Corp.*, 301 Ill. App. 3d 156 (1998), the plaintiff's attorney was held in contempt for refusing to disclose his client's bank account information. The appellate court concluded that, "[e]ven with a right of privacy in bank records guaranteed by the Illinois Constitution, the protection is only against unreasonable searches and seizures and not reasonable ones." *Id.* at 161. The appellate court affirmed the trial court's discovery order because the records sought were relevant and not excessive for the purpose of the relevant inquiry. *Id.*

¶ 43 In *In re Marriage of Puterbaugh*, 327 Ill. App. 3d 792 (2002), the appellate court considered a fourth amendment and Illinois constitutional right-of-privacy challenge to a discovery order. Elizabeth Puterbaugh petitioned for an increase in child support from her ex-husband David. During discovery, Elizabeth requested a copy of David's antenuptial agreement with his new wife, Katherine. David and Katherine claimed that the document was covered by marital privilege and that disclosure would violate "their right to privacy in their marriage under the constitutions of the United States and Illinois." *Id.* at 795. The appellate court considered the constitutional challenge and held that the financial information contained in David and Katherine's antenuptial agreement was not protected by the couple's constitutional right to privacy in their marriage. *Id.* at 796.

¶ 44 We can see from an examination of the decisions in *Dufour* and *Puterbaugh* that the constitutional analysis was unnecessary to resolve the issues in those cases. Constitutional principles should be addressed only when a case cannot be resolved in any other way. *In re Haley D.*, 2011 IL 110886, ¶ 54. Both the Illinois Supreme Court and the United States Supreme Court have made it clear that the rules of discovery contemplate disclosure of information that would otherwise be protected from disclosure. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30 (1984); *Kunkel*, 179 Ill. 2d at 538. The rules of discovery require full disclosure of information that is not privileged and that is relevant to the issues in the lawsuit. *Kunkel*, 179 Ill. 2d at 533-38. Additionally, the discovery rules provide for notice and opportunity to be heard before any physical or mental examination, or for that matter any private information, can be compelled. "Rule 201 and related rules governing specific discovery methods form a comprehensive scheme for fair and efficient discovery with judicial oversight to protect litigants from harassment." *Id.* at 531. "The concept of relevance facilitates trial preparation while safeguarding against improper and abusive discovery." *Id.* In 2012, Rule 201(m) was amended to "minimize any invasion of privacy that a litigant may have by filing discovery in a public court file." Ill. S. Ct. R. 201(m), Committee Comments (adopted Oct. 24, 2012).

¶ 45 The requirements of relevance and reasonableness together with judicial oversight provided by the rules of discovery appear to more than satisfy any fourth amendment or Illinois privacy concerns. See *Oklahoma Press Publication Co. v. Walling*, 327 U.S. 186, 196 (1946); *International Business Machines Corp.*, 83 F.R.D. at 103; *Luminella v. Marcocci*, 814 A.2d 711, 721 (Pa. Super. Ct. 2002).

¶ 46        Mark James also argues without any authority that the warrant clause of the fourth amendment applies to Rule 215 requests for physical and mental examinations. Even in cases where the government is seeking bodily samples via a grand jury subpoena, where there has been judicial review of the validity of the subpoena, the witness's fourth amendment rights are fully protected. *People v. Watson*, 214 Ill. 2d 271, 286 (2005). The Supreme Court made clear in *Schlagenhauf v. Holder*, 379 U.S. 104 (1964), that "the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule." *Id.* at 119.

¶ 47        We agree with Elida, Ryan, and the Attorney General that applying the fourth amendment to requests for discovery in civil cases between private parties undermines the core principles of modern discovery. As the United States Supreme Court said in *Mapp v. Ohio*, 367 U.S. 643 (1961), "[t]here is no war between the Constitution and common sense." *Id.* at 657. It is completely unnecessary to engage in fourth amendment or Illinois constitutional-privacy-clause analysis of discovery orders because, if an order satisfies the requirements of our rules, it would satisfy any constitutional concerns.

¶ 48        In *Kunkel*, the supreme court struck down an Illinois statute based in part on an Illinois constitutional privacy challenge because the statute required disclosure of highly personal medical information without any showing of relevance and without any form of judicial oversight or discretion to prevent abusive use of the consent procedure. *Kunkel*, 179 Ill. 2d at 531, 535. It is clear from Illinois Supreme Court decisions that a discovery order issued pursuant to a proper exercise of a procedural rule in a civil case does not infringe on any constitutional rights. *People ex rel. Terry v. Fisher*, 12 Ill. 2d 231, 240 (1957). However, a rule that permits compelled disclosure of private information without a constitutionally sufficient showing would violate the privacy clause of the Illinois Constitution.

¶ 49        We note that in *Kunkel* the Illinois Supreme Court cited a case that predated our modern rules of discovery–*Firebaugh v. Traff*, 353 Ill. 82 (1933), where the court applied Illinois constitutional analysis to a discovery order. The *Kunkel* court cited this case, however, to illustrate the point that, while full disclosure of medical information is required, the information must be relevant to the issues in the lawsuit. *Kunkel*, 179 Ill. 2d at 538. We do not believe that the court intended to open the floodgates to constitutional challenges to discovery orders. That said, the only way to resolve the present case is to consider Mark James' constitutional challenge to Rule 215. Mark James argues that "relevance under Rule 215 is broader than probable cause under the fourth amendment. Rule 215 isn't drafted narrowly enough to be constitutional."

¶ 50        In order to analyze Mark James' claim that Rule 215 is unconstitutional, we must first determine the nature of the right to be infringed by enforcement of that rule. Classification of the right dictates the level of scrutiny to be employed in determining whether the rule in question comports with the constitution. See *Tully v. Edgar*, 171 Ill. 2d 297, 304 (1996). Ordinarily courts will uphold a statute if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *Id.* Where, however, a classification has been made on the basis of, *inter alia*, race or national origin, or the constitutional right at issue is considered to be "fundamental," the presumption of constitutionality is weaker and the statute is subject to strict scrutiny. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 307 (2008). To survive strict scrutiny, "the measures employed by the government body must be necessary to serve a compelling state interest, and must be

narrowly tailored thereto, *i.e.*, the government must use the least restrictive means consistent with the attainment of its goal." *Id.* (citing *In re R.C.*, 195 Ill. 2d 291, 303 (2001)). Mark James argues that Rule 215 interferes with a fundamental right to privacy and that therefore we should apply strict scrutiny to that rule. In support of his argument that the right to privacy under the Illinois Constitution is infringed by Rule 215, he relies on *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381 (1992). In that case, the Illinois Supreme Court held that a person subpoenaed before the grand jury could not be compelled to submit a blood standard, pubic hair standard, or head hair standard unless probable cause was shown. *Id.* at 394-400. Mark James argues that physical and mental examinations are different from other forms of discovery because they require intrusion into another's body and therefore require a greater showing than relevance. *Id.* at 391-92.

¶ 51      Whether a person has a legitimate expectation of privacy varies with context, depending upon: (1) whether the individual asserting the right is at home, at work, in a car, etc.; and (2) the legal relationship involved. *Vernonia School District 47J v. Acton*, 515 U.S. 646, 654 (1995). Mark James is not a suspect in a criminal case. He is a party to a civil action and is in possession of material, his own DNA, that will likely determine whether Ryan is a beneficiary of the Barbara B. Kaull Trust. We reject his contention that strict scrutiny applies. Rule 215 does not "impose a direct impediment" to Mark James' right to privacy under the fourth amendment or article I, section 6, of the Illinois Constitution. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; see *Boynton v. Kusper*, 112 Ill. 2d 356, 369 (1986) (special tax on marriage license imposed a direct impediment on the fundamental right to marry). It is beyond dispute that civil litigants have a drastically reduced expectation of privacy. As the United States Supreme Court stated about discovery rules in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984):

"The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach. Under the Rules, the only express limitations are that the information sought is not privileged, and is *relevant* to the subject matter of the pending action. Thus, the Rules often allow *extensive intrusion* into the affairs of both litigants and third parties." (Emphases added.) *Id.* at 30.

¶ 52      Mark James relies on *Seattle Times* for the proposition that the government has a substantial interest in preventing the abuse of discovery procedures because they "may seriously implicate privacy interests of litigants and third parties." *Id.* at 35-36. He takes this language completely out of context. In *Seattle Times*, the Supreme Court upheld a protective order, issued under Rule 26(c) of the Federal Rules of Civil Procedure, that "prohibited petitioners from publishing, disseminating, or using the information in any way except where necessary to prepare for and try the case." *Id.* at 27. As the Supreme Court noted, most states, including Illinois and Washington, have adopted discovery rules modeled on federal Rules 26 through 37. Like federal Rule 26(c), Illinois Supreme Court Rule 201 (eff. July 1, 2002), which is applicable to all discovery, states that the trial court "may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression." As the Court explained, pretrial discovery procedures are in general conducted in private as a matter of modern practice. *Seattle Times*, 467 U.S. at 33. Protective orders afford private litigants like Mark James the opportunity to prevent public disclosure of private information tendered in discovery that

might be "damaging to reputation and *privacy*." (Emphasis added.) *Id*. at 35. Thus we agree with Elida, Ryan, and the Attorney General that Rule 215 should be assessed under the reasonableness standard.

¶ 53    The Illinois Supreme Court possesses rulemaking authority to regulate the trial of cases. *People v. Cox*, 82 Ill. 2d 268, 274 (1980). The supreme court is also free to modify and amend any rule or doctrine that it creates. *Larson v. Buschkamp*, 105 Ill. App. 3d 965, 967 (1982). The entire body of supreme court rules is periodically reviewed to "ensure that those rules continue to facilitate the administration of justice." Ill. S. Ct. R. 3(d) (eff. Mar. 22, 2010). The rules are under constant review and are frequently amended and revised. *In re Loss*, 119 Ill. 2d 186, 195 (1987). Rules 201 through 219 cover discovery. The supreme court, in performing its rulemaking function, is presumed to have acted in a constitutional manner and a rule may be overturned only if it is conclusively established to be arbitrary and unreasonable. See, *e.g.*, *People v. Pollution Control Board*, 129 Ill. App. 3d 958, 962 (1984) (General Assembly is presumed to have acted in a constitutional manner and its legislation may be overturned only if it is conclusively established to be arbitrary and unreasonable).

¶ 54    Mark James must establish that Rule 215 would be invalid under any set of circumstances. The constitution should, whenever possible, be construed to avoid irrational, absurd, or unjust consequences. *People ex rel. Giannis v. Carpentier*, 30 Ill. 2d 24, 29 (1964). Mark James argues that appellate courts that have interpreted the rule to require more than "in controversy" and "relevance" were incorrect in doing so, because it is clear from the committee comments on the rule that our supreme court intended to remove the "good cause" requirement when it amended the rule. The committee stated, "[t]he new language was adopted to effectuate the objectives of the rule with minimal judicial involvement. The requirement of 'good cause' was therefore eliminated as grounds for seeking an examination." Ill. S. Ct. R. 215, Committee Comments (revised June 1, 1995).[2] The changes to the rule appear to have had the intended effect as "[m]ost examinations are performed pursuant to informal agreements between attorneys for the parties involved rather than pursuant to S. Ct. Rule 215." Joseph G. Feehan, *Remedies for Noncompliance*, in Illinois Civil Discovery Practice § 10.39 (Ill. Inst. for Cont. Legal Educ. 2014).

¶ 55    We agree with Mark James that the supreme court intended to remove the "good cause" requirement. "The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature." *Kunkel*, 179 Ill. 2d at 533. Like statutes, rules must not be interpreted so as to defeat the intent of the drafter. *In re Estate of Rennick*, 181 Ill. 2d 395, 404 (1998) (when interpreting a supreme court rule, we apply the same principles of construction that apply to a statute). Trial and appellate courts are bound by the supreme court and have no authority to overrule the supreme court or modify its decisions. *Angelini v. Snow*, 58 Ill. App. 3d 116, 119 (1978). Supreme court rules have the force of law and must be applied as written. *Rodriguez v. Sheriff's Merit Comm'n*, 218 Ill. 2d 342, 353 (2006).

¶ 56    Whenever we interpret or construe a statute or rule it is important to consider the history of the legislation or rule and also to examine similar subjects though not strictly *in pari materia*. See *Walgreen Co. v. Industrial Comm'n*, 323 Ill. 194, 198 (1926). Unfortunately, other than his comparison of Rule 215 to federal Rule 35 and the rules in

---

[2]Rule 215 was amended on June 1, 1995, and became effective on January 1, 1996.

other states, Mark James fails to furnish any history surrounding the development of discovery rules permitting physical and mental examinations. The briefs filed by Elida, Ryan, and the Attorney General fare no better. The parties and the Attorney General do discuss the United States Supreme Court decisions in *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941), and *Schlagenhauf*. However, those cases dealt with fourth amendment challenges to federal Rule 35, which requires both that the "physical" or "mental" condition be "in controversy" as well as a showing by the requesting party that there is "good cause" for the examination.

¶ 57    The Attorney General points out that in *Schlagenhauf* the Supreme Court held that Rule 35 "could not be assailed on constitutional grounds." See *Schlagenhauf*, 379 U.S. at 113. Mark James responds by stating that in that case the Court held that the "good cause" requirement of federal Rule 35 was not a mere formality but was a plainly expressed limitation on the use of that rule. *Id.* at 118. Of course, Mark James is suggesting that the "good cause" limitation on the use of the rule is grounded in the fourth amendment rather than a precaution to make sure that trial courts carefully balance the interests of the parties before authorizing a surrender of personal privacy thought to be greater than with other discovery methods. We have carefully examined the history of both Illinois Rule 215 (formerly Rule 17) as well as federal Rule 35, and we agree with the Attorney General, Elida, and Ryan that a showing of "good cause" is not required by either the fourth amendment or the Illinois Constitution's privacy clause. See U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. The 1996 amendment removing the "good cause" requirement was not the only change to Rule 215. The rule was also amended to remove reference to "physician," "examining physician," and "expert." These terms were replaced with the term "licensed professionals." The committee recognized that requests for physical and mental examinations may well include other licensed professionals besides physicians. Ill. S. Ct. R. 215, Committee Comments (revised June 1, 1995). These changes, along with the removal of the "good cause" requirement, are consistent with the principles that "[d]isclosure is the object of all our discovery procedures" and that "trial courts should make disclosure a reality." *Buehler v. Whalen*, 70 Ill. 2d 51, 67 (1977). One commentator has suggested that the removal of the phrase "good cause" was due to the fact that in the early 1990s "courts had rejected several requests for examinations pursuant to Rule 215, so this amendment may reflect a desire on the part of the Committee for 215 examinations to be readily available." 10 Jeffrey S. Kinsler & Jay E. Grenig, Illinois Practice § 15:2, at 431 (2d ed. 2008).

¶ 58    Whatever the reasons for the changes in the rules, it is clear from the case precedent that led to the adoption of both federal Rule 35 and Illinois Rule 215 (formerly Rule 17) that a showing of "good cause" is not constitutionally required. In fact, the notes of the advisory committee on Rule 35 (1937) state:

> "The constitutionality of legislation providing for physical examination of parties was sustained in *Lyon v. Manhattan Railway Co.*, 142 N.Y. 298, 37 N.E. 113 (1894), and *McGovern v. Hope*, 63 N.J.L. 76, 42 Atl. 830 (1899). In *Union Pacific Ry. Co. v. Botsford*, 141 U.S. 250 (1891), it was held that the court could not order the physical examination of a party in the absence of statutory authority. But in *Camden and Suburban Ry. Co. v. Stetson*, 177 U.S. 172 (1900) where there was no statutory authority for such examination, derived from a state statute made operative by the conformity act, the practice was sustained. Such authority is now found in the present rule made operative by the Act of June 19, 1934, ch. 651, U.S.C., Title 28, §§ 723b

[now § 2072] (Rules in actions at law; Supreme Court authorized to make) and 723c [now § 2072] (Union of equity and action at law rules; power of Supreme Court)." Fed. R. Civ. P. 35, Advisory Committee Notes, 1937.

¶ 59    In *Lyon*, the statute at issue provided:

"In every action to recover damages for personal injuries, the court or judge, in granting an order for the examination of the plaintiff before trial, may, if the defendant apply therefor, direct that the plaintiff submit to a physical examination by one or more physicians or surgeons to be designated by the court or judge, and such examination shall be had and made under such restrictions and directions as to the court or judge shall seem proper." (Internal quotation marks omitted.) *Lyon*, 142 N.Y. at 303.

¶ 60    The New York Court of Appeals rejected the plaintiff's argument that the "statute in effect interferes with the sacredness and privacy of her own person, and deprives her of her liberty and natural rights and the equal protection of the laws." *Id.* at 302. In response, the court stated:

"The argument, though perhaps novel, and subject to the objection that it seeks to push a principle to extremes, is not without interest on account of the ideas advanced and the manner of their presentation. In the view we take of the questions involved in the appeal, it will not be necessary to follow the discussion. The statute enacts a rule of procedure, the purpose of which is the discovery of the truth in respect of certain allegations which the plaintiff has presented for judicial investigation in the courts of justice. It prescribes a method of aiding the court and jury in the correct determination of an issue of fact raised by the pleadings, and, as it seems to me, does not violate any of the express or implied restraints upon legislative power to be found in the fundamental law. But, in regard to the meaning and construction of the statute, I think the court below was entirely correct. The general purpose of the enactment was to change a rule of the common law which had recently been asserted by the highest court and by this court. (*The Union Pacific Railway Co. v. Botsford*, 141 U.S. 250; *McQuigan v. D., L.&W. R.R. Co.*, 129 N.Y. 50.)" *Id.*

¶ 61    The statute at issue in *McGovern* provided:

"On or before the trial of any action brought to recover damages for injury to the person, the court before whom such action is pending may, from time to time, on application of any party therein, order and direct an examination of the person injured as to the injury complained of by a competent physician or physicians, surgeon or surgeons, in order to qualify the person or persons making such examination to testify in the said cause as to the nature, extent and probable duration of the injury complained of; and the court may in such order direct and determine the time and place of such examination: provided, this act shall not be construed to prevent any other person or physician from being called and examined as a witness as heretofore." (Internal quotation marks omitted.) *McGovern v. Hope*, 42 A. 830, 831 (N.J. 1899).

¶ 62    The plaintiff in *McGovern* argued that the statute was unconstitutional. In rejecting the plaintiff's argument, the Supreme Court of New Jersey echoed the holding in *Lyon* that the statute did not "violate any of the express or implied restraints upon the legislative power to be found in the fundamental law." (Internal quotation marks omitted.) *Id.* at 832. The *McGovern* court also noted that "[t]he plaintiff, having brought suit and made claim for

damages on account of personal injuries of that nature, cannot complain that the defendant resorts to legal methods to ascertain the existence and extent of such injuries." *Id*. at 833.

¶ 63    The United States Supreme Court, in *Camden*, considered the application of New Jersey's statute on physical examination to a diversity case tried in federal court. The plaintiff was a citizen of Pennsylvania, and the railway company was a corporation of New Jersey. The plaintiff's alleged injury occurred in Camden, New Jersey. When the case was called for trial, defense counsel requested that the plaintiff submit to an examination by a "competent surgeon." *Camden*, 177 U.S. at 173. The plaintiff refused and the trial court held that "it had no power to order the plaintiff to subject himself to examination by physicians against his will." *Id*. The jury returned a verdict for the plaintiff. The circuit court of appeals certified three questions for the Supreme Court to address. The first two questions dealt with the issue of whether the statute applied to a case tried in federal court. The third question asked, " '[h]ad the Circuit Court the legal right or power to order a surgical examination of the plaintiff?' " *Id*. The Supreme Court held that the statute did apply. The Court also stated, "[t]here is no claim made that the statute violates the Federal Constitution, and we are of [the] opinion that such a claim would have no foundation, if made." *Id*. at 175. The Supreme Court went on to add that the validity of the statute had been affirmed by the Supreme Court of New Jersey in *McGovern*. It went on to say, "[t]he opinion of the court [in *McGovern*] *** held that the act was within the power of the legislature, and was not an infringement upon the constitutional rights of the party." *Id*. at 176. The Court also noted that the validity of this type of statute had also been upheld in *Lyon*, where the New York statute was "declared not to be in violation of the constitutional rights of the party." *Id*.

¶ 64    Forty-one years after *Camden*, the Supreme Court addressed the validity of federal Rule 35 in *Sibbach*. In that case, Sibbach brought an action in the Northern District of Illinois for damages for bodily injury inflicted in Indiana. The defendant moved for a physical examination, which the court ordered. Sibbach refused and was held in contempt. The circuit court held that the order for a physical examination was valid and affirmed the judgment. The Supreme Court granted *certiorari* because of the importance of the question involved. *Sibbach*, 312 U.S. at 7. Sibbach maintained that the rule, while procedural, affected his substantive rights and was therefore not within the power delegated to the Court by Congress. *Id*. at 13. The Court noted that the courts of Indiana held that orders requiring physical examinations were proper, whereas the courts of Illinois held that such an order could not be made. *Id*. The Court held that Rule 35 was a rule of procedure and therefore controlling in all district courts. *Id*. at 13-14. The Court also rejected the fourth amendment challenge, stating:

> "The suggestion that the rule offends the important right to freedom from invasion of the person ignores the fact that as we hold, no invasion of freedom from personal restraint attaches to refusal so to comply with its provisions. If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded. The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. That the rules in question are such is admitted." *Id*. at 14.

¶ 65    In *Schlagenhauf*, the Court again rejected a fourth amendment challenge to federal Rule 35, which provided:

" 'Physical and Mental Examination of Persons. (a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.' " *Schlagenhauf*, 379 U.S. at 106 (quoting Fed. R. Civ. P. 35).

¶ 66 Schlagenhauf was a bus driver who was involved in a rear-end collision with a tractor-trailer. The passenger sued the bus company, Greyhound, and the owner of the trailer, Contract Carriers. Contract Carriers alleged that Schlagenhauf was not mentally or physically capable of driving a bus at the time of the accident. The attorney for Contract Carriers filed an affidavit stating that "Schlagenhauf had seen red lights 10 to 15 seconds before the accident, that another witness had seen the rear lights of the trailer from a distance of three-quarters to one-half mile, and that Schlagenhauf had been involved in a prior accident." *Id*. at 108. On the basis of the petition filed by Contract Carriers, over objection and without a hearing, the trial court ordered Schlagenhauf to submit to nine examinations, despite the fact that the petition requested only four examinations. Schlagenhauf applied in the court of appeals for a writ of *mandamus* against the district court judge. The court of appeals denied the writ. The Supreme Court granted *certiorari* "to review undecided questions concerning the validity and construction of Rule 35." *Id*. at 109. Schlagenhauf argued that "the application of the Rule to a defendant would be an unconstitutional invasion of his privacy, or, at the least, be a modification of substantive rights existing prior to the adoption of the Federal Rules of Civil Procedure and thus beyond the congressional mandate of the Rules Enabling Act." *Id*. at 112-13. The Supreme Court noted that these same contentions were raised in *Sibbach*, where the Court rejected a fourth amendment challenge by a plaintiff. Schlagenhauf acknowledged the holding in *Sibbach*, but argued that Rule 35 "should not be extended to defendants." *Id*. at 113. The Supreme Court disagreed, stating:

> "We can see no basis under the *Sibbach* holding for such a distinction. Discovery 'is not a one-way proposition.' *Hickman v. Taylor*, 329 U.S. 495, 507. Issues cannot be resolved by a doctrine of favoring one class of litigants over another." *Id.*

¶ 67 The *Schlagenhauf* Court held that "Rule 35, as applied to either plaintiffs or defendants to an action, is free of constitutional difficulty and is within the scope of the Enabling Act." *Id*. at 114. The Court also made clear that in *Sibbach* both the majority and dissenting opinions agreed that Rule 35 "could not be assailed on constitutional grounds." *Id.* at 113.

¶ 68 After rejecting the constitutional claim, the Court discussed the construction of the rule. The Court noted that the scope of discovery with respect to all discovery rules, including physical and mental examinations of parties, "is limited by Rule 26(b)'s provision that 'the deponent may be examined regarding *any matter, not privileged, which is relevant* to the subject matter involved in the pending action.' " (Emphases added and in original and omitted.) *Id*. at 117.

¶ 69 Mark James is correct that the Court discussed at length the application of Rule 35's "in controversy" and "good cause" requirements. However, it did so without ever discussing the fourth amendment. The Court made clear that mental and physical examinations should not be ordered automatically, but only "upon a discriminating application by the district judge of

the limitations prescribed by the Rule." *Id.* at 121. Had the Court been of the opinion that the fourth amendment required a greater showing than relevance it would have said so and it would have overruled its decision in *Camden*.

¶ 70    We now turn our attention back to Illinois, which was one of the last states to adopt a rule providing for physical and mental examinations of parties. Even before the adoption of a supreme court rule governing physical and mental examinations, the Illinois Supreme Court held that trial courts in our state have inherent power to order physical examinations in appropriate cases. *People ex rel. Noren v. Dempsey*, 10 Ill. 2d 288, 294-95 (1957).[3] That case was an original action in *mandamus* challenging a trial court's order requiring the plaintiff in a personal injury action to submit to an examination by physicians. *Id*. at 288-89. The challenge to the order was based upon the court's alleged lack of power to enter it. *Id*. at 288. The supreme court noted that it would consider pertinent cases that held the view that the courts lacked the power to order physical examinations. *Id*. at 289-91. The court then commented, "[b]ut what is most striking about [those cases] is that no reason for the asserted want of power has ever been stated, nor has the problem ever been analyzed. It has been *ipse dixit* from the outset." *Id*. at 292. The court noted that it was clear that from the earliest times the common law "permitted and required physical examinations where they were necessary. And other courts have recognized an inherent power to require them when the ends of justice require." *Id*. The court discussed possible reasons for the prior Illinois opinions:

> "Two possible explanations of this treatment of the problem occur to us. Strong feelings as to the 'inviolability of the person' (see the majority opinion in *Union Pacific Railway Co. v. Botsford*, 141 U.S. 250 (1891),) may have been tacitly responsible. But when one seeks to recover damages on the basis of his physical injuries he puts his physical condition in issue. It becomes a fact to be proved, as much as the physical conduct that gave rise to his injury, or the documents on which a right to recover is asserted in a contract action. The basic principle that animates our law of evidence is that what is relevant is admissible. Exceptions to that principle must justify themselves. If there is to be exception here, it must be because a privilege exists. And a privilege in the law of evidence, to be soundly based, must rest on considerations that make it more desirable to risk concealment of the truth than to disrupt the values that the privilege supports. No such considerations are involved in the ordinary physical examination in a personal injury case." *Id*. at 292-93.

The court continued that the other explanation was the doctrine of " 'lack of power,' " under which courts felt that it was appropriate for the legislature and not the courts to decide whether such examinations should be permitted. *Id*. at 293 (citing *People ex rel. Wayman v. Steward*, 249 Ill. 311, 316 (1911)). This view ignored common-law precedents and it "overlook[ed] the power of our courts to regulate judicial procedure." *Id*. "By decision, by rule of court, and by statute, physical examination is almost everywhere permitted in appropriate cases." *Id*. at 294. Our supreme court could not have been more clear in *Kunkel* when it explained that, while a person has a reasonable expectation of privacy in his personal characteristics, our constitution "does not accord absolute protection against invasions of privacy. Rather, it is unreasonable invasions of privacy that are forbidden." (Emphasis

---

[3]We are perplexed by the failure of the parties and the Attorney General to discuss this important case in their briefs.

omitted.) *Kunkel*, 179 Ill. 2d at 538. The court said that "[i]n the context of civil discovery, reasonableness is a function of relevance." *Id*. While the supreme court's focus in *Kunkel* was the Civil Justice Reform Amendments of 1995, the court's analysis applies with equal force to Mark James' Rule 215 challenge. The court commented that "confidentiality of personal medical information is, without question, at the core of what society regards as a *fundamental component of individual privacy*." (Emphasis added.) *Id*. at 537. However, "[i]t is reasonable to require full disclosure of medical information that is relevant to the issues in the lawsuit." *Id*. at 538.

¶ 71       We recognize that since 1995 two panels of our appellate court have indicated that a showing of "good cause" is still required under Rule 215. See *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 189-90 (2005); *Copeland v. McLean*, 327 Ill. App. 3d 855, 862 (2002). In both of those cases, however, the courts accurately quoted the amended Rule 215 language, but cited and relied upon cases interpreting the pre-1996 version of the rule.

¶ 72       In *Jarke*, 2011 IL App (4th) 110150, ¶ 29, the appellate court said that, where there was a presumption of paternity and one sibling was attempting to disinherit another sibling, a trial court should not order a DNA test unless there was a showing of "persuasive and credible" evidence that would lead the court to believe that the DNA test would result in disinheritance. In the instant case the trial court followed *Jarke* and found that Ryan had presented "ample evidence" to meet that standard.

¶ 73       Rule 215 still requires that the movant produce sufficient information to meet the "in controversy" and "relevance" requirements so that the trial judge can fulfill his function mandated by the rule. An evidentiary hearing is not necessarily required, though a hearing may be required in some cases. The showing "could be made by affidavits or other usual methods short of a hearing." *Schlagenhauf*, 379 U.S. at 119. Discovery should be denied when insufficient evidence suggests that the requested exam is relevant or will lead to relevant evidence. See *Manns v. Briell*, 349 Ill. App. 3d 358 (2004). For all of these reasons, then, we hold that Rule 215 does not violate the fourth amendment to the United States Constitution or the privacy clause of the Illinois Constitution. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6.

¶ 74                                  B. Illinois Parentage Act

¶ 75       Mark James argues that the Parentage Act applies to this case because section 9(a) of the Parentage Act provides that "[i]n any civil action not brought under this Act, the provisions of this Act shall apply if parentage is at issue." 750 ILCS 45/9(a) (West 2010). Mary argues that this court does not have jurisdiction to consider Mark James' claim that the Parentage Act controls, because the appeal in this case is pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Feb. 26, 2010), an appeal from an order holding Mark James in contempt. Additionally, Mark James raised the applicability of the Parentage Act in his motion for judgment on the pleadings, which was denied. "A ruling denying a motion for judgment on the pleadings is not an appealable order." *Fabian v. Norman*, 138 Ill. App. 3d 507, 509 (1985). In his reply brief, Mark James claims that his assertion that the Parentage Act applies in this case relates to the trial court's subject matter jurisdiction. He argues that "[a]n action taken by a court that is without subject matter jurisdiction is void and may be attacked at any time."

¶ 76     We agree with Mary. " '[S]ubject matter jurisdiction' refers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002). Here, the trial court clearly had subject matter jurisdiction.

> "It is a well-settled right of a trustee that '[w]herever there is any *bona fide* doubt as to the true meaning and intent of the provisions of the instrument creating the trust or as to the particular course which he ought to pursue, the trustee is always entitled to maintain a suit in equity at the expense of the trust estate and obtain a judicial construction of the instrument and directions as to his own conduct.' " (Internal quotation marks omitted.) *Bangert v. Northern Trust Co.*, 362 Ill. App. 3d 402, 408-09 (2005) (quoting *Warner v. Mettler*, 260 Ill. 416, 420 (1913)).

Mary was clearly entitled to bring this action in order to seek proper instruction from the court as to who were the beneficiaries of the trust. Mark James argues that, under section 11(a) of the Parentage Act, DNA tests requested by a party are limited to the DNA of the mother, the child, and the alleged father. 750 ILCS 45/11(a) (West 2010). Mark James did not rely on the Parentage Act as grounds for refusing to submit a DNA sample; therefore, he has forfeited review of this issue. Forfeiture aside, this claim is meritless. To the degree that the Parentage Act conflicts with Rule 215 regarding who may request or who may be ordered to submit to a DNA test, the supreme court rule controls. *People ex rel. Aldworth v. Dutkanych*, 112 Ill. 2d 505, 510-11 (1986) (blood tests as a matter of discovery under Rule 215); *People ex rel. Coleman v. Ely*, 71 Ill. App. 3d 701, 704 (1979) (blood tests).

¶ 77                                C. Physical Condition

¶ 78     Mark James argues that his "inherited characteristics," *i.e.*, his alleged biological relationship to Ryan, is not a physical condition within the meaning of Rule 215. He acknowledges, however, that a long line of Illinois precedent dictates the opposite result. *Aldworth*, 112 Ill. 2d at 511; *Jarke*, 2011 IL App (4th) 110150, ¶ 8; *Zavaleta v. Zavaleta*, 43 Ill. App. 3d 1017, 1021 (1976).

¶ 79     We have no authority to overrule our supreme court. *People v. Gersch*, 135 Ill. 2d 384, 396 (1990). In *Aldworth*, the court unequivocally stated that Rule 215 "authorizes the tests as a matter of discovery." *Aldworth*, 112 Ill. 2d at 510-11 (blood tests to determine paternity). Even if the supreme court had not ruled on this issue, we would not agree with Mark James' argument. He claims that, because rules in 42 states and federal Rule 35 have been amended to specifically include tests for inherited characteristics, and because Illinois Rule 215 has not been so amended, "the authority to order tests to determine inherited characteristics is outside the scope of the rule." This argument has no merit whatsoever. Our discovery rules "were designed to be flexible and adaptable to the infinite variety of cases and circumstances appearing in the trial court." *Atwood v. Warner Electric Brake & Clutch Co.*, 239 Ill. App. 3d 81, 88 (1992). Rule 215 operates at the intersection of justice and science. The rules committee and the supreme court were wise not to amend the rule. Had they done so we would no doubt see more arguments like Mark James' based on the rule of construction *expressio unius est exclusio alterius* (the mention of one thing implies exclusion of another). Parties in civil litigation "may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved." Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2002). In this case, as in many cases, the parties have taken advantage of the rules to discover information

that would be otherwise highly personal and confidential. Mark James, for example, took full advantage in his Illinois Supreme Court Rule 213 (eff. Jan. 1, 2007) interrogatories of Elida to learn the intimate details of her relationship with Mark Kaull. Mark James relies upon some of these answers in his brief before this court. It would be manifestly unfair to Ryan to allow Mark James to use liberal discovery as a sword on the one hand and on the other hand shield private, yet relevant, information of his own. The purpose of full discovery is not only to level the playing field but also to seek the truth so that cases are decided based on the facts revealed, not on what information is concealed. *People v. Tally*, 2014 IL App (5th) 120349, ¶ 27 (the purpose of discovery rules is to prevent unfair surprise or advantage and to aid in the search for the truth).

¶ 80                                   D. Compliance With Rule 215

¶ 81    In the alternative, Mark James argues that, assuming Rule 215 is constitutionally sound, the trial court abused its discretion in ordering DNA testing, because Elida and Ryan's motion "neither strictly nor substantially" complied with Rule 215's requirements. He also argues, relying on *Jarke*, that there was no "clear and persuasive evidence" to support the trial court's order. Finally, he argues that Elida and Ryan's motion did not include a statement of compliance with Illinois Supreme Court Rule 201(k) (eff. July 1, 2002) (statement that reasonable attempts to resolve differences have been made). Each of these claims is without merit.

¶ 82    Although a "good cause" requirement has been eliminated from Rule 215, physical and mental examinations, like all of our discovery devices, require that trial courts carefully exercise their discretion. Trial courts must balance the relevance of and need for the requested disclosure against any excessive burden or hardship. A trial court's ruling on the grant or denial of a Rule 215 request is reviewed for an abuse of discretion. *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1006 (2008).

¶ 83    The record demonstrates that, well before the hearing on Elida and Ryan's motion, Mark James made it clear to opposing counsel and to the trial court that he would object to an order requiring him to submit to DNA testing, based upon his constitutional argument. Mark James informed the trial court, "I do want to let you know, Your Honor, that Mr. Meyer and I have been talking. He has been great to work with. The professional courtesy and all that, that's the way lawyers should behave." Regarding compliance with the specific requirements of Rule 215, the trial court directed counsel to include the name of the testing agency and other information in the proposed order. Counsel for Ryan submitted an order that complied with Rule 215's requirements, which was entered over Mark James' objection. In any event, failure to follow the specific requirements of Rule 215 may be corrected on remand with a specific order. *Harris v. Mercy Hospital*, 231 Ill. App. 3d 105, 109 (1992).

¶ 84    Mark James argues that the evidence presented for the Rule 215 order was insufficient as a matter of law because Elida "judicially admitted" facts that gave rise to the presumption that Ralph is Ryan's father. He argues that there is no chain of custody for the 2009 home DNA tests and that the hearsay affidavits are unreliable under *Jarke*. We reject these arguments. The Parentage Act provides that the marital presumptions of paternity are rebuttable. *People ex rel. the Department of Public Aid v. Smith*, 212 Ill. 2d 389, 404 (2004). The affidavits of Elida and Ralph rebut the presumption that Ralph is Ryan's father. *Tersavich v. First National Bank & Trust*, 143 Ill. 2d 74, 80-81 (1991); *People ex rel. Davis v.*

*Clark*, 99 Ill. App. 3d 979, 980-81 (1981). The presumption's having been rebutted leaves the issue of whether Mark is Ryan's father.

¶ 85   As we have stated, the trial court has broad discretion under Rule 215 in determining whether a sufficient showing of relevance has been made. Mark James' argument that the evidentiary standards for chain of custody must be met before a trial court can consider a DNA lab report would defeat the purpose of the rule. We find no abuse of discretion by the trial court in considering the report as part of Elida and Ryan's showing of relevance.

¶ 86   Mark James relies on *Jarke* for the proposition that the hearsay affidavits in this case are unreliable. *Jarke* is inapposite. In *Jarke*, the movant presented two hearsay affidavits, one from the movant herself, and the other from a 17-year-old who lived with the movant. The appellate court determined that these affidavits constituted an insufficient showing under Rule 215 to order DNA testing, especially in light of the presumption of paternity that "has deep roots in the common law." *Jarke*, 2011 IL App (4th) 110150, ¶ 25. This was especially true in light of the evidence presented by the respondent to the motion, which included the deposition of the children's mother, which corroborated the presumption of paternity. *Id.* ¶ 32.

¶ 87   Unlike the affidavits in *Jarke*, the evidence submitted by Elida and Ryan was very reliable. We note that, although a movant's relevancy showing need not be based upon evidence that would be admissible at trial, the statements attributed to Mark Kaull, as well as his note to the Texas Department of Human Services wherein he claimed to be Ryan's father, fell under Illinois Rule of Evidence 804(b)(4) (eff. Jan. 1, 2011). That rule provides, in relevant part:

> "(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> * * *
>
> (4) Statement of Personal or Family History.
>
>    (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, *relationship by blood*, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated[.]" (Emphasis added.) Ill. R. Evid. 804(b)(4)(A) (eff. Jan. 1, 2011).

The trial court properly relied on this information in granting Ryan's Rule 215 motion.

¶ 88   Finally, we reject Mark James' argument that there must be a showing of strict compliance with Rule 201(k) in order for the trial court to order an examination pursuant to Rule 215. Mark James cites *Williams v. A.E. Staley Manufacturing Co.*, 83 Ill. 2d 559 (1981), in support of this argument. In *Williams*, our supreme court stated:

> "In proper circumstances Rule 201(k) might be satisfied by a showing of active, but unsuccessful, efforts to contact, and proof of telephone calls unreturned or letters unanswered might, in some instances, suffice. There is, however, nothing of that type in this case." *Id.* at 566.

¶ 89   It is clear from the record that counsel for Elida and Ryan and Mark James had been in regular contact during the three months between the filing of Elida and Ryan's motion pursuant to Rule 215 and Mark James' objections, which were filed late. Counsel for Mark James actually praised Mr. Meyer for his professionalism. The trial court found that requiring

a statement pursuant to Rule 201(k) in Elida and Ryan's motion would be "an exercise in futility." See *Hartnett v. Stack*, 241 Ill. App. 3d 157, 174 (1993). Like in *Hartnett*, the record shows "an adamant refusal to budge" by Mark James. *Id.* During argument on the Rule 201(k) issue, the court commented to counsel for Mark James, "and you told me you were going to take it up on appeal if I ordered this."

¶ 90    We agree with the trial court that compliance with Rule 201(k) was unnecessary given the record in this case. That being said, we remind trial counsel that, except in unique circumstances, compliance is required.

¶ 91                                    E. Contempt Finding

¶ 92    Based on the above rationale we uphold the trial court's Rule 215 order requiring Mark James to submit a DNA sample. However, in light of the trial court's finding that Mark James' refusal to comply with the Rule 215 order was made in good faith to challenge the constitutionality of the rule, we vacate the contempt order. *Dufour*, 301 Ill. App. 3d at 162-63.

¶ 93                                    III. CONCLUSION

¶ 94    For the foregoing reasons, we hold that Rule 215 is constitutional under the fourth amendment to the United States Constitution as well as under the Illinois Constitution's privacy clause. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. We also hold that the requirements of Rule 215 apply to a request for DNA testing in a trust case to determine beneficiaries and that inherited characteristics are considered a "physical condition" under that rule. Further, the trial court did not abuse its discretion in ordering a DNA test in this case. The record demonstrates compliance with both Rules 201(k) and 215. Finally, based upon the trial court's finding of "good faith," we vacate the contempt ruling. Accordingly, the trial court's judgment is affirmed in part and vacated in part, and this cause is remanded for further proceedings consistent with this opinion.

¶ 95    The judgment of the circuit court of Winnebago County is affirmed in part and vacated in part, and this cause is remanded.

¶ 96    Affirmed in part and vacated in part; cause remanded.